UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARCO DIMERCURIO, et al.,

Plaintiffs,

v.

EQUILON ENTERPRISES LLC,

Defendant.

Case No. 19-cv-04029-JSC

**ORDER RE: DEFENDANT'S MOTION TO DISMISS**

Re: Dkt. No. 19

Marco Dimercurio, Charles Gaeth, John Langlitz, and Malcolm Synigal (collectively, "Plaintiffs") sue Equilon Enterprises LLC dba Shell Oil Products US ("Defendant" or "Shell") alleging various wage and hour violations under California law. (Dkt. No. 18.)[1] Now before the Court is Defendant's motion to dismiss Plaintiffs' first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] (Dkt. No. 19.) After careful consideration of the parties' briefing and having had the benefit of oral argument on January 15, 2020, the Court DENIES Defendant's motion.

## BACKGROUND

### I.      Complaint Allegations

Plaintiffs are current or former employees of Shell, which operates an oil refinery in Martinez, California. (Dkt. No. 18 at ¶ 1, 10-14.) Plaintiffs work or worked at the Martinez facility as refinery operators. (*Id.* at ¶ 1.) Shell requires its refinery operators "to work regular 12-hour shifts." (*Id.* at ¶ 2.) "In addition to their regular 12-hour shifts, operators at Shell's Martinez

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.
[2] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos.

refinery must regularly be available for designated 12-hour standby shifts twice a day."[3]  (*Id.*)

When assigned to cover standby shifts, operators must "be at the ready to receive calls during two 1.5-hour time periods" ("standby periods") that "commence 30 minutes prior to the start of the scheduled shift and end an hour after the standby shift has started."  (*Id.* at ¶ 3.)  If an operator is called during these standby periods but cannot be reached, "the operator is considered absent without leave and is subject to disciplinary action."  (*Id.*)  If an operator is reached and asked to work the scheduled standby shift during one of these standby periods, the operator must report for duty at the refinery within 2 hours.  (*Id.*)  Operators are not compensated during these standby periods and are instead paid only "when actually required to work the standby shift."  (*Id.* at ¶¶ 3, 9.)  Further, Shell's standby shift requirements "significantly limit employees' ability to earn other income, take classes, care for dependent family members, and enjoy time for recreation."  (*Id.* at ¶ 7.)

The gravamen of Plaintiffs' complaint is that Shell's failure to compensate Plaintiffs for the standby periods violates reporting-time pay requirements under California law.  Plaintiffs bring this action on behalf of themselves and "[a]ll operators working at the [Martinez] refinery . . . at any time from four years prior to the filing of [the] complaint" and final judgment.  (*Id.* at ¶ 25.)

## II.    Procedural History

In June 2019, Plaintiffs filed their original class action complaint in California state court bringing a claim for "Failure to Pay Reporting Time Pay" in violation of Industrial Welfare Commission ("IWC") Wage Order 1-2001 ("IWC Wage Order"), and derivative claims for "Failure to Pay All Wages Earned at Termination" in violation of California Labor Code §§ 200-203; "Failure to Provide Accurate Wage Statements" in violation of Labor Code §§ 226, 226.3;

---

[3] The standby shift policy outlined in the CBA provides, in pertinent part: "Standby personnel must be available during the period extending 30 minutes prior to and one hour after the beginning of the shift for which designated as standby."  (Dkt. No. 4, Ex. A at 92.)  The policy then lists two separate periods: "Standby period on day shift – 5:30 am until 7:00 am"; and "Standby period on night shift – 5:30 pm until 7:00 pm."  (*Id.*)  In other words, an individual employee is only responsible for the one shift (i.e., day or night) that he or she was "designated as the standby."  (*See id.*)

2

and "Unfair Business Practices" in violation of California's Unfair Competition Law ("UCL),

California Business and Professions Code § 17200.  (Dkt. No. 1, Ex. A at 19.)  Defendant timely

removed the complaint pursuant to the diversity jurisdiction provisions of the Class Action

Fairness Act, 28 U.S.C. §§ 1332(d), and purported federal question jurisdiction under 28 U.S.C. §

1331.  (Dkt. No. 1 at ¶¶ 2, 3.)

Plaintiffs filed the operative first amended complaint ("complaint") in October 2019,

asserting their previous claims and adding a claim under California's Private Attorneys General

Act ("PAGA"), Labor Code § 2698.  (Dkt. No. 18.)  Defendant filed the instant motion to dismiss

thereafter.  (Dkt. No. 19.)  The motion is fully briefed, (*see* Dkt. Nos. 20 & 21), and the Court

heard oral argument on January 15, 2020.

## REQUEST FOR JUDICIAL NOTICE

Generally, "district courts may not consider material outside the pleadings when assessing

the sufficiency of a complaint under Rule 12(b)(6)."  *Khoja v. Orexigen Therapeutics, Inc.*, 899

F.3d 988, 998 (9th Cir. 2018).  When such materials "'are presented to and not excluded by the

court,' the 12(b)(6) motion converts into a motion for summary judgment under Rule

56."  *Id.* (quoting Fed. R. Civ. P. 12(d)).  There are, however, "two exceptions to this rule: the

incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201."  *Id.*

As relevant here, courts may take judicial notice of an "adjudicative fact" pursuant to the Federal

Rules of Evidence if that fact is one "that is not subject to reasonable dispute because it: (1) is

generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily

determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid.

201(b)(1),(2).

In conjunction with its motion to dismiss, Defendant requests judicial notice of: (1)

collective bargaining agreements and related agreements (collectively, "CBA") between Plaintiffs'

union and Defendant, which were previously filed with the Court in support of Defendant's notice

of removal, (*see* Dkt. No. 4, Exs. A-C); and (2) court documents filed in connection with the

settlement in *Berlanga, et al. v. Equilon Enterprises LLC dba Shell Oil Products US, et al.*, N.D.

Cal. Case No. 3:17-cv-00282-MMC ("*Berlanga*"), (*see* Dkt. Nos. 19-2 – 19-6, Exs. A-E).

Plaintiff opposes Defendant's request for judicial notice because the documents are not "relevant" to adjudicating the instant motion.[4]  The Court disagrees in part.

The CBA is relevant in this wage-and-hour case because its terms govern the employment relationship between Plaintiffs and Defendant.  It is also relevant to resolving the instant motion as Defendant asserts that dismissal is warranted because section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), preempts Plaintiffs' claims.  *See Johnson v. Sky Chefs, Inc.*, No. 11-CV-05619-LHK, 2012 WL 4483225, at *1 n.1 (N.D. Cal. Sept. 27, 2012) ("Courts routinely take judicial notice of the governing collective bargaining agreement where necessary to resolve issues of [LMRA] preemption.").  Courts also routinely take judicial notice of CBAs at the motion to dismiss stage.  *See, e.g., Sarmiento v. Sealy, Inc.*, 367 F. Supp. 3d 1131, 1142-43 (N.D. Cal. 2019) ("Courts regularly take judicial notice of a CBA in evaluating a motion to dismiss.") (internal quotation marks and citation omitted); *Densmore v. Mission Linen Supply*, 164 F. Supp. 3d 1180, 1187 (E.D. Cal. 2016); *Hernandez v. Sysco Corp.*, No. 16-cv-06723-JSC, 2017 WL 1540652, at *2 (N.D. Cal. Apr. 28, 2017); *Jones v. AT&T*, No. C 07-3888 JF (PR), 2008 WL 902292, at *2 (N.D. Cal. Mar. 31, 2008).  Accordingly, the Court grants Defendant's request for judicial notice of the CBA because it is a proper subject of judicial notice under Federal Rule of Evidence 201(b).

The court documents filed in *Berlanga* would also ordinarily constitute proper subjects of judicial notice.  *See Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (noting that judicial notice is appropriate for "undisputed matters of public record, including documents on file in federal or state courts") (internal citation omitted); *see also Bennet v. Medtronic, Inc.*, 285 F.3d 801, 803 n.2 (9th Cir. 2002) (recognizing that courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.").  Two of the named plaintiffs in *Berlanga*—Charles Gaeth and John Langlitz—are Plaintiffs in this action.  Thus, their release in *Berlanga* of all wage-related claims

---

[4] Plaintiffs' opposition to Defendant's request for judicial notice conflates judicial notice with the incorporation by reference doctrine.  (*See generally* Dkt. No. 20-1.)  Because Defendant does not assert that the documents are incorporated by reference in the complaint, the Court need not address Plaintiffs' arguments on that score.

against Shell for a specified time period is directly related to this case and is indeed relevant. However, the Court agrees with Plaintiffs that the *Berlanga* documents are not relevant to resolving the instant motion.

Defendant's motion cites the *Berlanga* documents in a footnote in the "Statement of Facts" and asserts that "[t]he *Berlanga* settlement bars Gaeth and Langlitz from pursuing claims for the period through September 2, 2018." (Dkt. No. 19 at 11 n.2.) The motion does not otherwise cite the *Berlanga* documents in support of Defendant's arguments regarding dismissal, nor does Defendant's reply cite the documents. Because the *Berlanga* documents are not necessary to resolve Defendant's motion to dismiss, the Court concludes that judicial notice of those documents is inappropriate. *See CYBERSitter, LLC v. People's Republic of China*, 805 F. Supp. 2d 958, 964 (C.D. Cal. 2011) (declining to take judicial notice of facts irrelevant to defendants' motions to dismiss); *see also Synopsys, Inc. v. InnoGrit, Corp.*, No. 19-CV-02082-LHK, 2019 WL 4848387, at *6 (N.D. Cal. Oct. 1, 2019) (same); *Hitachi Kokusai Elec. Inc. v. ASM Int'l, N.V.*, No. 17-cv-06880-BLF, 2018 WL 6099953, at *3 (N.D. Cal. Nov. 21, 2018) (same).

Accordingly, the Court grants Defendant's request for judicial notice of the CBAs and related agreements because they are proper subjects of judicial notice under Federal Rule of Evidence 201(b). The Court declines to take judicial notice of the *Berlanga* documents at this time because they are not relevant to the instant motion.

## DISCUSSION

The IWC Wage Order[5] at issue provides, in pertinent part:

Reporting Time Pay

(A) Each workday an employee is required to report for work and does report, but is not put to work or is furnished less than half said employee's usual or scheduled day's work, the employee shall be paid for half the usual or scheduled day's work, but in no event for less than two (2) hours nor more than four (4) hours, at the employee's regular rate of pay, which shall not be less than the minimum wage.

---

[5] The Supreme Court of California recognizes that "wage orders are issued pursuant to an express delegation of legislative power, and they have the force of law." *Alvarado v. Dart Container Corp. of California*, 4 Cal. 5th 542, 552 (2018).

Cal. Code Regs., tit. 8, § 11010 subd. 5 (2001). There is no dispute that Plaintiffs' claim for reporting-time pay consists of three elements: (1) the employee is required to report for work; (2) the employee does report; and (3) the employee is not put to work. Plaintiffs argue that they "report[ed] for work" under the meaning of the Wage Order by being available telephonically during the standby periods as required by Shell and that Shell violated the Wage Order by failing to compensate them for that time. (Dkt. No. 20 at 6.) Plaintiffs acknowledge that their other claims are derivative of the reporting-time pay claim. (*Id.*)

Defendant moves to dismiss the complaint pursuant to Rule 12(b)(6) on the grounds that: (1) section 301(a) of the LMRA preempts Plaintiffs' claims; and (2) the complaint otherwise fails to state a claim for the wage and hour violations alleged. (Dkt. No. 19 at 7-8.) The Court addresses each argument in turn.

## I.        Preemption under the LMRA

Section 301 of the LMRA, codified at 29 U.S.C. § 185(a), states in relevant part that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties." Preemption of state law claims under section 301 applies to "claims founded directly on rights created by collective-bargaining agreements," and "claims substantially dependent on analysis of a collective-bargaining agreement." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394 (1987); *see also McCray v. Marriot Hotel Servs., Inc.*, 902 F.3d 1005, 1010 (9th Cir. 2018) ("[Section] 301 generally preempts state law claims that implicate a collective-bargaining agreement, except for claims that (1) arise independently of a CBA, and (2) don't substantially depend on analysis of a CBA.").

Courts apply a two-part test for determining whether a claim is preempted by section 301. *Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053, 1060 (9th Cir. 2007). First, the court determines "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA. *Id.* at 1059. "If the right exists solely as a result of the CBA, then the claim is preempted, and [the] analysis ends there." *Id.* If the right exists independent of the CBA, the court turns to the second prong: whether the claim is "substantially dependent on

analysis of a collective-bargaining agreement." *Id.* (internal quotation marks and citation omitted). If the claim does not depend on analysis of a collective bargaining agreement, the claim is not preempted and may proceed under state law. The court's decision in this regard is based on "whether the claim can be resolved by 'look[ing] to' versus interpreting the CBA." *Id.* (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 121 (1994)). "[T]he bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Livadas*, 512 U.S. at 124; *see also Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir. 2001) ("If the claim is plainly based on state law, § 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense.").

Here, Defendant does not dispute that Plaintiffs' claim for reporting-time pay concerns a right conferred by state law. (*See* Dkt. No. 21 at 6 (recognizing "the existence of a state law mandate to pay reporting time wages" when the Wage Order's provisions are met), 9 ("The LMRA preemption issue is whether it is necessary to interpret the CBA to determine whether the employee possesses that right in the first instance").) Because Plaintiffs' claim for reporting-time pay arises under state law and would exist with or without the CBA, the first prong of the *Burnside* test is not met. Thus, the Court turns to the second prong to determine whether Plaintiffs' reporting-time pay claim is "substantially dependent on analysis" of the CBA. *See Burnside*, 491 F.3d at 1059. It is not.

Defendant argues that whether Plaintiffs are owed reporting-time pay "depends on whether the mutually agreed standby system amounts to an employer-imposed requirement that operators on standby 'report for work.'" (Dkt. No. 19 at 16.) Thus, Defendant asserts that Plaintiffs' reporting-time pay claim is preempted by the LMRA because resolution of the claim requires interpretation of the CBA's terms. The Court agrees that whether Plaintiffs are entitled to reporting-time pay pursuant to the Wage Order hinges on whether Shell's standby shift policy required Plaintiffs to "report for work" by being available telephonically during the standby periods. However, Defendant has not demonstrated that determining the answer to that question requires interpretation of the CBA; instead, it requires interpretation of the Wage Order and California case law. In other words, the dispositive issue—whether merely being on standby and

United States District Court
Northern District of California

available telephonically constitutes "report[ing] for work" under the meaning of the Wage Order—is a question of law. The CBA offers no guidance on that score. Indeed, Defendant recognizes as much and fails to cite any specific provisions of the CBA that are in *dispute* and require interpretation. (*See* Dkt. No. 19 at 9-10 ("[T]he CBA does not expressly define 'report.' Rather, to glean a definition would require careful review and construction of the CBA's several terms on shift scheduling, standby call-outs, and compensation.")); *see also Sarmiento*, 367 F. Supp. 3d at 1146 (noting that prong two of the *Burnside* test is not satisfied where defendant's motion "fails to identify any particular CBA provision that must be interpreted") (internal quotation marks and citation omitted).

Simply put, Plaintiffs assert that Defendant is required to compensate them for reporting-time pay that Plaintiffs earn during the standby periods (i.e., the 1.5-hour time periods during which Shell requires its standby employees be available telephonically) and Defendant does not dispute that Shell does not pay its operators for that time. The Court need only "look to" the CBA to see that the standby shift policy exists as alleged by Plaintiffs. (*See* Dkt. No. 4, Ex. A at 92 (providing, in pertinent part: "Standby personnel must be available during the period extending 30 minutes prior to and one hour after the beginning of the shift for which designated as standby[,]" and "[s]tandby personnel must provide a telephone number at which they can be reached during the standby period and/or will be expected to carry a pager in the event they are not able to be reached directly by telephone.").) The CBA further provides, in pertinent part: "Standby personnel must be able to assume the duties for which they are called within a reasonable time period of being contacted to report to work. This time period is not to exceed two hours." (*Id.*) The cited provisions track Plaintiffs' allegations. Thus, resolution of Plaintiffs' reporting-time pay claim and derivative claims, which are premised on Shell's failure to compensate Plaintiffs during the standby period, does not require substantial analysis or interpretation of the CBA.

Defendant's citation to the district court's recent decision in *Wood v. Marathon Refining Logistics Serv. LLC*, No. 19-cv-04287-YGR, 2019 WL 6612252 (N.D. Cal. Dec. 5, 2019) is unpersuasive. (*See* Dkt. No. 23.) The plaintiffs in *Wood* brought suit pursuant to the same Wage Order at issue here based on a standby shift policy that, as alleged, is nearly identical to the

8

challenged policy in this case.  *See* 2019 WL 6612252, at *1.  The *Wood* court determined that the plaintiffs' claims were preempted by the LMRA because, as pleaded, the plaintiffs' complaint would require the court "to wade into a maze of nuanced and ambiguous provisions in multiple, heavily-negotiated agreements."  *Id.* at *4.  In making that determination, the *Wood* court cited key ambiguities in the plaintiffs' complaint that required CBA interpretation.  *See id.* ("It is not at all clear based on plaintiffs' complaint the extent to which this case involves a 'mandatory' standby obligation or a 'voluntary' one, and in any event, whether 'crews' created standby shift systems for their own convenience or used defendant's default procedure.").  Such ambiguities are not present here.  The court further cited specific terms and phrases in the challenged policy that the court would need to examine and interpret to adjudicate the case.  *Id.* ("For example, to determine the extent of the alleged constraints on plaintiffs' time during standby shifts, the [c]ourt would have to analyze terms pursuant to which standby employees may 'trade or otherwise exchange standby assignments,' may notify defendant if they are 'otherwise unavailable when on standby,' and must reach the refinery 'within a reasonable time' after receiving a call.'").  The court concluded that "[s]uch interpretation requires more than simply flipping through the CBAs and related guidelines."  (*See id.*)

Similar issues of interpretation are not present here.  Indeed, and as previously discussed, Defendant's motion fails to cite any specific provisions of the CBA that are in dispute and require interpretation.  Defendant's belated oral argument identification of the provision stating that "Standby Coverage and Requirements" are "set forth as a guide which should cover most circumstances that arise" and that "exceptions . . . should be carefully considered and kept to a minimum" does not persuade the Court otherwise.  (*See* Dkt. No. 4 at 92-93.)  What "guide" means will not have to be interpreted by the Court; instead, the question will be how Defendant actually implements the policy.  Accordingly, the Court DENIES Defendant's motion to the extent it asserts that Plaintiffs' claims are preempted by the LMRA.

## II.     Failure to State a Claim

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl.*

9

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In deciding a motion to dismiss, courts must accept all well-pleaded "factual allegations in the complaint as true and construe the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Mar. Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The same assumption of truth does not apply, however, to legal conclusions or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Defendant argues that dismissal is warranted pursuant to Rule 12(b)(6) on the grounds that Plaintiffs' reporting-time pay claim "fail[s] to allege[ ] an employer-imposed duty that they were required to report for work, and further fail to allege that they did report for work without being paid the minimum amounts required by [the Wage Order]." (Dkt. No. 19 at 7.) Defendant asserts that Plaintiffs' derivative claims fall with the reporting-time claim, and also fail for independent reasons. (*See id.* at 23-27.) The Court addresses each claim in turn.

### A. Reporting-Time Pay Claim

As previously discussed, to state a claim for reporting-time pay Plaintiffs must allege that: (1) Shell required Plaintiffs to "report for work"; (2) Plaintiffs did report; and (3) Plaintiffs were not put to work. *See* Cal. Code Regs., tit. 8, § 11010 subd. 5. Thus, the threshold inquiry is whether Plaintiffs adequately allege that complying with Shell's standby policy required refinery operators to "report for work." Defendant argues that Plaintiffs' claim fails because they "allege no more than that they were passive standby with no affirmative duty to call in or to otherwise affirmatively report to [Shell]." (Dkt. No. 19 at 7.)

#### 1. Plaintiffs have alleged that they were required to "report for work"

Plaintiffs allege—and the CBA demonstrates—that Shell's standby policy requires that refinery operators assigned as standby personnel be available to receive a telephone call from Shell during the standby period (i.e., 1.5 hours) on the day or night of their scheduled standby shift. In other words, refinery operators must be on call for 1.5-hour periods on the date they are assigned as standby personnel. If Shell is unable to contact an assigned standby employee, that employee is subject to disciplinary action. (*See* Dkt. No. 18 at ¶ 3.) The issue then is whether requiring an employee to be on call pursuant to Shell's standby policy plausibly constitutes

requiring that employee to "report for work" within the meaning of the Wage Order. Plaintiffs

assert that it does, relying on the recent California Court of Appeal decision in *Ward v. Tilly's,*

*Inc.*, 31 Cal. App. 5th 1167 (2019). The Court agrees.

The *Ward* court addressed the meaning of "report for work" in the context of a wage order

that contains a "Reporting Time Pay" provision identical to the one in the Wage Order at issue in

this case. *See Ward*, 31 Cal. App. 5th at 1176-77 (quoting Cal. Code Regs., tit. 8, § 11070, subd. 5

(2001) and noting that the phrase "report for work" is not defined therein). The plaintiff in *Ward*

sought reporting-time pay based on the defendant-employer's practice of "on-call scheduling,"

whereby:

> Employees are assigned on-call shifts, but are not told until they call
> in two hours before their shifts start whether they should actually
> come in to work. If they are told to come in, they are paid for the
> shifts; if not, they do not receive any compensation for having been
> "on call."

*Id.* at 1170. The defendant "required employees to call in exactly two hours before the start of on-

call shifts, and it treat[ed] calling in late for an on-call shift or failing to call in for an on-call shift

the same as missing a regularly scheduled shift." *Id.* at 1189 (alteration in original) (internal

quotation marks omitted). The plaintiff argued "that when on-call employees contact Tilly's two

hours before on-call shifts, they are 'report[ing] for work' within the meaning of the wage order,

and thus are owed reporting time pay." *Id.* at 1171. (alteration in original). The defendant

countered that "employees 'report for work' only by physically appearing at the work site at the

start of a scheduled shift," and therefore "employees who call in and are told not to come to work

are not owed reporting time pay." *Id.* The court rejected the defendant's argument, concluding:

> [T]he on-call scheduling alleged in this case triggers [the wage
> order's] reporting time pay requirements. As we explain, on-call
> shifts burden employees, who cannot take other jobs, go to school, or
> make social plans during on-call shifts—but who nonetheless receive
> no compensation from Tilly's unless they ultimately are called in to
> work. This is precisely the kind of abuse that reporting time pay was
> designed to discourage.

*Id.* After detailed discussion of the "regulatory history and purpose" of the wage order's

reporting-time pay requirement, the court explained:

> [A]n employee need not necessarily physically appear at the

United States District Court
Northern District of California

workplace to "report for work." Instead, "report[ing] for work within the meaning of the wage order is best understood as presenting oneself *as ordered*. "Report for work," in other words, does not have a single meaning, but instead is defined by the party who directs the manner in which the employee is to present himself or herself for work—that is, by the employer.

As thus interpreted, the reporting time pay requirement operates as follows. If an employer directs employees to present themselves for work by physically appearing at the workplace at the shift's start, then the reporting time requirement is triggered by the employee's appearance at the job site. But if the employer directs employees to present themselves for work by logging on to a computer remotely, or by appearing at a client's job site, or by setting out on a trucking route, then the employee "reports for work" by doing those things. And if, as plaintiff alleges in this case, the employer directs employees to present themselves for work by telephoning the store two hours prior to the start of a shift, then the reporting time requirement is triggered by the telephonic contact.

*Id.* at 1185. The court noted that its holding that "employees may be owed reporting time pay for on-call shifts [was] consistent with" the California Supreme Court's holding in *Augustus v. ABM Sec. Servs., Inc.*, 2 Cal. 5th 257 (2016). *Id.* at 1186. The *Augustus* court held that requiring employees to remain on call during 10-minute rest periods violated California wage-and-hour law, which requires "that employers relinquish any control over how employees spend their break time, and relieve their employees of all duties—including the obligation that an employee remain on call." 2 Cal. 5th at 273. The *Ward* court noted that although *Augustus* did not address reporting-time pay, its analysis was instructive in *Ward* because there the defendant's on-call requirement similarly "limit[ed] how employees can user their off-duty time" and was thus "inconsistent with being off-duty, . . . trigger[ing] the reporting time pay requirement." 31 Cal. App. 5th at 1187.

Here, drawing all reasonable inferences in Plaintiffs' favor, Shell's standby policy is similarly "inconsistent with being off-duty" in that it requires assigned employees to make themselves available for 1.5 hours on a scheduled date to possibly receive a phone call to work a standby shift. During those 1.5-hour periods Plaintiffs were in limbo and could not engage in an activity that would interfere with receiving a phone call. As a result, Plaintiffs were not truly off-duty during the standby period because Shell limited what they could do and when they could do it. Plaintiffs have thus sufficiently alleged that the Wage Order's reporting-time pay mandate is triggered, as it was in *Ward*.

12

Defendant attempts to distinguish *Ward* primarily because the employees in that case were required to actively telephone their employer and were not, like Plaintiffs here, passively waiting for a call *from* their employer.  (*See* Dkt. No. 19 at 21-22 ("There is no allegation that [Defendant] directs employees to present themselves in any manner—whether to physically go to the refinery, to call in, to log into [sic] a computer remotely, or to otherwise affirmatively contact the refinery in any manner.") (emphasis omitted).)  That is a distinction without a difference, however, and the *Ward* court's reasoning applies with equal—and arguably greater—force on the facts alleged here. The employees in *Ward* at least knew definitively two hours prior to the start of their on-call shift whether or not they would be required to work, and they needed access to a phone only long enough to make the required call.  Conversely, the standby employees in this case must *wait* for their phone to ring within the standby period.  In other words, for the entire standby period the assigned employees must ensure that they are in a location where they can accept a telephone call. They must also ensure that they are within a two-hour commute from the Martinez refinery, in the event that Shell does call.  Further, the standby period in this case produces the same constraints noted by the *Ward* court; specifically, "at the time employees are required [to be on-call] to find out whether they will be required to work on-call shifts, they cannot do things that are incompatible with making [or taking] a phone call, such as sleeping, watching a movie, taking a class, or being without cell phone service."  *See Ward*, 31 Cal. App. 5th at 1183.

Construing the factual allegations as true, the Court cannot say as a matter of law that Shell's standby policy requiring Plaintiffs to be on call for pre-scheduled 1.5-hour periods did not require Plaintiffs to "report for work" within the meaning of the Wage Order.

### 2.    Plaintiffs have alleged that they did report and were not put to work

Defendant further argues that Plaintiffs fail to plead a reporting-time pay claim because they "disregard" the second element (i.e., "and does report"), "as well as the CBA's actual compensation provisions," which demonstrate that Defendant pays standby employees who are actually called in to cover a shift.  (*See* Dkt. No. 19 at 22-23.)  Not so.  First, the complaint alleges that all operators at the Martinez refinery are subject to the mandatory standby policy and that all named Plaintiffs are current or former operators who worked at the Martinez refinery and "were

scheduled to cover standby shifts." (*See* Dkt. No. 18 at ¶¶ 3, 10-13, 23.)  Thus, Plaintiffs have plausibly alleged that they reported to work as required under the policy by making themselves available to receive a telephone call during the 1.5-hour standby period.  Second, whether Defendant pays reporting-time wages to standby employees who are actually called in to cover a shift but then sent home because the person they were called to replace showed up in time to not be considered AWOL does not defeat Plaintiffs' claim that failing to compensate standby employees for the 1.5-hour standby period when they are *not* actually called in violates the Wage Order.  (*See* Dkt. No. 18 at ¶¶ 9 ("Shell does not credit its operators at its Martinez, California refinery for 'reporting to work' when the employee is scheduled for a standby shift and is not told that they have work during the standby shift."), 24 ("Unless Plaintiffs or other operators were asked to work a standby shift, Shell did not provide them with any compensation, including reporting time pay.").)

Accordingly, the Court denies Defendant's motion to dismiss Plaintiffs' reporting-time pay claim.  The Court next addresses the independent grounds Defendant asserts regarding dismissal of Plaintiffs' derivative claims.

**B.      Failure to Pay Wages Upon Termination**

Defendant's asserted grounds for dismissal of Plaintiffs' second cause of action for failure to pay all wages earned at termination concern only one named Plaintiff—Mr. Synigal.  Defendant argues that dismissal is warranted because the complaint fails to plead that Mr. Synigal was "personally . . . subject to standby coverage at any time during the past four years."  (Dkt. No. 19 at 23.)  Defendant is wrong.

The complaint alleges that Mr. Synigal "worked as an operator at Shell's Martinez refinery and separated from Shell's employment days prior to the filing of [the original] complaint in June 2019."  (Dkt. No. 18 at ¶ 13.)  The complaint further alleges that "[d]uring the course of their employment, Plaintiffs were asked to cover designated, 12-hour standby shifts twice a day."  (*Id.* at ¶ 23; *see also id.* ("During their employment with Shell, Plaintiffs have frequently been scheduled to cover standby shifts, which always involved a scheduled start time[ ] and . . . ending time[ ].").)  Thus, the claim is plausible because the complaint sufficiently alleges that Mr. Synigal

was subject to the challenged standby policy during the relevant time period. *See Twombly*, 550 U.S. at 570 (holding that a complaint must allege "enough facts to state a claim to relief that is plausible on its face" to survive dismissal).

Defendant asserts no other basis for dismissing this claim. Accordingly, the Court denies Defendant's motion to dismiss the second cause of action.

### C.  Failure to Provide Accurate Itemized Wage Statements

California Labor Code § 226 requires an employer to provide its employees "an accurate and itemized statement in writing showing:

> (1) gross wages earned, (2) total hours worked by the employee, except as provided in subdivision (j), (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee . . . .

Cal. Lab. Code § 226(a). To state a claim for a wage statement violation under section 226, a plaintiff must allege: (1) a violation of Section 226(a); (2) that is knowing and intentional; and (3) "an injury resulted from the violation." *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 810 (N.D. Cal. 2015).

Plaintiffs' third cause of action alleges that Shell failed to provide them with accurate wage statements that "include correct numbers for total hours worked, gross wages earned, net wages earned, applicable hourly rates for the pay period at issue, and other information required by law[,]" in violation of Labor Code sections 226, 226.3. (Dkt. No. 18 at ¶ 46.) The gravamen of this claim is that Shell failed to accurately report and calculate reporting-time pay on the wage statements. (*See id.* at ¶¶ 46-47.) Defendant moves to dismiss Plaintiffs' wage statement claim on the grounds that "unpaid reporting time pay is not an earned wage, and it has no place on a statement of wages paid." (Dkt. No. 19 at 25; *see also* Dkt. No. 21 at 13 (asserting that section

226 "has no mandate for inclusion of wages not paid the employee may later claim are due for hours not worked") (emphasis omitted).) Defendant further argues that Plaintiffs fail to allege an injury resulting from any alleged omission. The Court addresses each argument in turn.

### 1. "Unpaid reporting time pay is not an earned wage"

California courts recognize that reporting-time pay constitutes a wage. *See, e.g., Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1111-12 (2007) (noting that "reporting-time pay is compensation"); *Shine v. Williams-Sonoma, Inc.*, 23 Cal. App. 5th 1070, 1077 (2018) ("[R]eporting-time pay is a form of wages.") (citing *Murphy*, 40 Cal. 4th at 1111-12). Defendant's argument that *unpaid* reporting time-pay need not be included on a wage statement because it is not an "earned wage" misses the point. (*See* Dkt. No. 19 at 24-25.) This claim is derivative of Plaintiffs' reporting-time pay claim and, as previously discussed, Plaintiffs have adequately alleged that they are entitled to (i.e., that they earned) reporting-time pay during the standby period by making themselves available as required. It follows that if Plaintiffs earned reporting-time pay during the relevant time period and were not properly compensated, then the wage statements furnished to them during that time were not accurate because they did not include all wages earned.

Further, even if this were a standalone claim and not derivative claim of Plaintiffs' reporting-time pay claim, Plaintiffs' allegations are sufficient. The complaint alleges that "[r]eporting time pay was not accurately reported or calculated, such that no calculations could be performed to derive the accurate times, rates, and pay that should have been part of their compensation." (Dkt. No. 18 at ¶ 47.) Plaintiffs do not allege, as Defendant seems to suggest, that the wage statements were inaccurate because they did not include reference to *unpaid* reporting-time wages. Instead, Plaintiffs allege that they "could not easily and promptly determine from their wage statements that they had been properly paid," primarily because Shell failed to accurately report and calculate reporting-time pay. (*Id.* at ¶¶ 46-47.) Those allegations are sufficient at the pleading stage to state a section 226 wage statement claim.

Defendant's reliance on *Ward* for the proposition that reporting-time pay "is not an earned wage" is misplaced. (*See* Dkt. No. 19 at 24-25 (*quoting Ward*, 31 Cal. App. 5th at 1184).) *Ward*

did not address whether employers must include reporting-time pay on wage statements. Further,

the language Defendant cites discusses the general "goals" of the reporting-time pay mandate; it

does not squarely address whether reporting-time pay is an "earned wage." (*See id.*) Similarly,

Defendant presents no authority for the proposition that an employer need not include reporting-

time pay on wage statements because it does not reflect hours actually worked. (*See id.* at 24.)

Indeed, that argument appears contrary to California law. *See Murphy*, 40 Cal. 4th at 1113 (noting

that employers "must pay up to four hours of [reporting-time] wages even if the employee

performed *no* work"). In the absence of any authority to the contrary, the Court cannot say on this

record that Plaintiffs' wage statement claim fails as a matter law because wage statements need

not reflect reporting-time pay.

### 2. Whether Plaintiffs have alleged an injury

Labor Code § 226 provides that an employee suffers an injury for purposes of a wage

statement claim when "the employer fails to provide accurate and complete information as

required under subdivision (a) and:

> the employee cannot promptly and easily determine from the
> wage statement alone one or more of the following:
>
> (i) The amount of the gross wages or net wages paid to the
> employee during the pay period or any of the other
> information required to be provided on the itemized wage
> statement pursuant to items (2) to (4), inclusive, (6), and (9)
> of subdivision (a).

Cal. Lab. Code § 226(e)(2)(B)(i). "[T]he injury requirement is minimal[,]" and "hinges on

whether an employee can 'promptly and easily determine' from the wage statement, standing

alone, the information need to know whether he or she is being underpaid." *Novoa v. Charter

Commc'n, LLC*, 100 F. Supp. 3d 1013, 1029 (E.D. Cal. 2015).

Defendant argues that dismissal is warranted because "nothing in the Labor Code requires

that the employer list amounts *not* being made for hours *not* worked," and even if it did, such an

"omission would not give rise to the presumption of injury." (Dkt. No. 19 at 25.) Again,

Defendant appears to misconstrue Plaintiffs' wage statement claim to the extent Defendant

suggests that the alleged violation is based on a failure to itemize reporting-time wages that

Plaintiffs did not *earn*. (*See* Dkt. No. 21 at 14 (arguing that the dispositive issue is "whether unearned wages not paid for hours not worked belong on a wage statement") (emphasis omitted).) The complaint alleges that Plaintiffs did earn reporting-time pay and that the wage statements did not accurately reflect the amounts earned. (*See* Dkt. No. 18 at ¶¶ 46-47 (alleging that Plaintiffs "could not easily and promptly determine from their wage statements that they had been properly paid" because reporting-time wages were "not accurately reported or calculated, such that no calculations could be performed to derive the accurate times, rates, and pay that should have been part of their compensation").) Plaintiffs' allegations as a whole give rise to a plausible inference that Shell omitted or did not accurately calculate compensable reporting-time wages from Plaintiffs' wage statements. Those allegations are sufficient to allege an injury under Labor Code § 226. *See Novoa*, 100 F. Supp. 3d at 1029-30 (finding injury for purposes of wage statement claim where wage statement at issue "omitted potentially compensable hours and the appropriate rate of pay for those hour[s]").

Accordingly, the Court denies Defendant's motion to dismiss the third cause of action.

**D.    Unfair Competition Law Claim**

The UCL prohibits, and provides civil remedies for, "unfair competition," defined as "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Each of these three adjectives captures a separate and distinct theory of liability." *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010) (internal quotation marks and citation omitted). Plaintiffs' complaint alleges that Shell's reporting-time pay practices constitute both an "unlawful" and "unfair" business practice. Defendant argues that dismissal is warranted because: (1) Plaintiffs' underlying Labor Code claims fail; and (2) Plaintiffs "have no available UCL remedy in any event." (Dkt. No. 19 at 26). The Court addresses each argument in turn.

**1.    "Unlawful" conduct and underlying Labor Code claims**

UCL claims under the unlawful prong "borrow[ ] violations of other laws . . . and make[ ] those unlawful practices actionable under the UCL." *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007). "Thus, a violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong." *Id.* Accordingly, UCL claims under the

United States District Court
Northern District of California

unlawful prong "stand or fall depending on the fate of the antecedent substantive causes of action." *Krantz v. BT Visual Images, LLC*, 89 Cal. App. 4th 164, 178 (2001).

Here, the Court concludes that Plaintiffs' Labor Code claims survive dismissal. Thus, Plaintiffs' UCL claim based on Defendant's allegedly "unlawful" conduct survives as well.

### 2. UCL remedy

Restitution and injunctive relief are the only remedies available under the UCL. *Korea Supply Co. v. Lockheed Martin Co.*, 29 Cal. 4th 1134, 1144 (2003). "[E]arned wages that are due and payable pursuant to [the Labor Code]" are "a restitutionary remedy authorized by the UCL." *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 177-78 (2000). Plaintiffs allege that Shell's standby policy denied them "wages earned, due and payable," and Plaintiffs seek restitution of those amounts. (*See* Dkt. No. 18 at ¶ 54.) Defendant asserts that dismissal is warranted because reporting-time wages "are not wages earned," but are instead "remedies that arise out of the employers' conduct, and not the employee's efforts." (Dkt. No. 19 at 26 (citing *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1401-02 (2010).) The Court disagrees.

First, *Pineda* did not hold that unpaid reporting-time wages are not recoverable under the UCL. The court instead recognized that employees could seek restitution of unpaid wages under the UCL but held that *penalties* under Labor Code § 203 for failure to make timely payment of wages to an employee who is terminated or who quits are not recoverable. *See Pineda*, 50 Cal. 4th at 1402 ("We thus hold section 203 penalties cannot be recovered as restitution under the UCL."). In so holding the court reasoned that "it is the employers' action (or inaction) that gives rise to section 203 penalties. The vested interest in unpaid wages, on the other hand, arises out of the employees' action, i.e., their labor." *Id.* at 1402.

As previously discussed, Plaintiffs have sufficiently alleged that they earned reporting-time pay by complying with Shell's standby policy and making themselves available during the standby period and that Shell failed to compensate them for that time. Further, California courts recognize that "reporting-time pay, like split shift and overtime pay, is a form of wages even though it serves the dual purpose of shaping employer behavior." *Shine*, 23 Cal. App. 5th at 1077 (citing *Murphy*, 40 Cal. 4th at 1111-12). Thus, absent authority that reporting-time pay cannot constitute an

19

"earned wage" recoverable as a restitutionary remedy under the UCL, the Court cannot say that Plaintiffs' UCL claim fails as a matter of law.

Accordingly, the Court denies Defendant's motion to dismiss Plaintiffs' UCL claim.

**E.      Private Attorney General Act Claim**

Under the PAGA, "an aggrieved employee" may sue "on behalf of himself or herself and other current or former employees" to recover civil penalties under the Labor Code that could otherwise "be assessed and collected by the Labor and Workforce Development Agency.  Cal. Lab. Code § 2699(a).  Defendant argues that Plaintiffs' PAGA claim fails because their underlying claims "under the Labor Code are ill-disguised LRMA claims."  (Dkt. No. 19 at 27.)  As previously discussed, Defendant's LRMA preemption argument is unavailing.  Thus, the Court denies Defendant's motion to dismiss the PAGA claim to the extent it is premised on grounds of preemption.

Defendant further argues that "even if analyzed under state law, the [underlying] Labor Code claims" fail.  For the reasons previously discussed, Plaintiffs' Labor Code claims survive dismissal.  Accordingly, the Court denies Defendant's motion to dismiss Plaintiffs' PAGA claim.

**CONCLUSION**

For the reasons set forth above, the Court denies Defendant's motion to dismiss.

This Order disposes of Docket No. 19.

**IT IS SO ORDERED.**

Dated: January 15, 2020

JACQUELINE SCOTT CORLEY
United States Magistrate Judge