UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCO DIMERCURIO, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>EQUILON ENTERPRISES LLC,<br><br>　　　　Defendant. | Case No.  19-cv-04029-JSC<br><br>**SUPPLEMENTAL ORDER RE: CLASS CERTIFICATION**<br><br>Re: Dkt. Nos. 140, 141 |

On August 30, 2021, the Court granted in part Plaintiffs' motion for class certification on three of four claims.[1] (Dkt. No. 116.)[2] Thereafter, the Court granted Plaintiffs leave to amend their complaint to include additional allegations as to the remaining claim for waiting time penalties. (Dkt. No. 126; *see* Dkt. No. 122.) Now before the Court are the parties' supplemental briefs regarding class certification of the waiting time penalties claim. (Dkt. Nos. 140, 141; *see* Dkt. Nos. 123, 125.) After carefully considering the briefing, the Court GRANTS Plaintiffs' motion for class certification as to the waiting time penalties claim.

**DISCUSSION**

The factual background and procedural history set forth in the Court's earlier order are incorporated by reference here. (Dkt. No. 116 at 1–7.) The Court concluded that Plaintiffs have satisfied the numerosity, commonality, typicality, and adequacy requirements of Federal Rule of Civil Procedure 23(a), except as to the waiting time penalties claim. (*Id.* at 8–13.) The Court

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 12, 13.)
[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

further concluded that the predominance and superiority requirements of Rule 23(b)(3) are met. (*Id.* at 17–18.)

The Second Amended Complaint ("SAC") alleges that "[b]y February 1, 2020 all members of the Class were separated from employment" due to the sale of the refinery. (Dkt. No. 122 ¶ 10.) Plaintiff Malcolm Synigal voluntarily separated from employment in June 2019, while Plaintiffs Marco DiMercurio, John Langlitz, and Charles Gaeth were discharged when the refinery was sold on or about January 31, 2020. (*Id.* ¶¶ 11–14.) The SAC alleges that "[m]embers of the Class who have separated from Shell's employment were not paid required reporting time pay within 24 hours after a discharge, or 72 hours after a resignation, as applicable." (Dkt. No. 122 ¶ 42.) The SAC asserts willful violations of Cal. Lab. Code §§ 201 (providing that "[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately"), 202 (providing that if an employee "quits," wages are due and payable within 72 hours, except if the employee has given 72 hours' notice, then the wages are due and payable at the time of quitting), 203 (providing that "the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days"). Thus, the SAC seeks penalties of 30 days' wages for each class member whose employment with Defendant ended. (Dkt. No. 122 ¶ 44.)

Plaintiffs seek to certify the following sub-classes:

<u>2016-2019 Waiting Time Penalties Sub-Class</u>

All Class Members who have been employed and separated from employment (either by involuntary termination or resignation) at the refinery of Equilon Enterprises LLC dba Shell Oil Products US in Martinez, California, at any time from June 4, 2016 through June 3, 2019, and who, upon separation from employment, did not timely receive all wages owed as a result of reporting obligations.

<u>2019-2020 Waiting Time Penalties Sub-Class</u>

All Class Members who have been employed and separated from employment (either by involuntary termination or resignation) at the refinery of Equilon Enterprises LLC dba Shell Oil Products US in Martinez, California, at any time from June 4, 2019 through January 31, 2020, and who, upon separation from employment, did not timely receive all wages owed as a result of reporting obligations.

1  (Dkt. No. 140 at 7.)  Plaintiff Synigal represents the former sub-class and Plaintiffs DiMercurio,

2  Langlitz, and Gaeth represent the latter.  (Dkt. No. 122 at 11.)

3        June 4, 2019 is the date Plaintiffs filed their original complaint.  (Dkt. No. 1 at 1.)  By

4  splitting the sub-classes by date, Plaintiffs appear to be addressing Defendant's argument that the

5  class period for this claim can only extend until the date Plaintiffs filed their original complaint.

6  (*See* Dkt. No. 116 at 15–16.)  Whether class members who separated from employment after the

7  original complaint was filed can recover waiting time penalties is a common, predominant

8  question of law.  *Cf. Sillah v. Command Int'l Sec. Servs.*, 154 F. Supp. 3d 891, 918 (N.D. Cal.

9  2015) (holding that individual plaintiff could not recover because he was fired after filing suit);

10 *Perez v. Leprino Foods Co.*, No. 1:17-cv-00686-AWI-BAM, 2021 WL 53068, at *13–14 (E.D.

11 Cal. Jan. 6, 2021) (certifying waiting time penalties sub-class for employees who separated "at any

12 time within four years prior to the filing of the original complaint until" the date of certification).

13       The briefing addresses several issues identified by Defendant and the Court, which go to

14 both class certification and standing.

> Although both concepts aim to measure whether the proper party is before the court to tender the issues for litigation, they spring from different sources and serve different functions.  *Standing* is meant to ensure that the injury a plaintiff suffers defines the scope of the controversy he or she is entitled to litigate.  *Class certification,* on the other hand, is meant to ensure that named plaintiffs are adequate representatives of the unnamed class.  Unfortunately, when courts have found a disjuncture between the claims of named plaintiffs and those of absent class members, they have not always classified the disjuncture consistently, some referring to it as an issue of standing, and others as an issue of class certification.

*Melendres v. Arpaio*, 784 F.3d 1254, 1261 (9th Cir. 2015) (cleaned up).  Ninth Circuit law takes the "class certification approach," which "holds that once the named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded, and the court proceeds to consider whether the Rule 23(a) prerequisites for class certification have been met."[3]  *Id.* at 1261–

---

[3] All class members, not just the named Plaintiffs, must have Article III standing.  *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2207 (2021).  Class member standing is not at issue here because all members are alleged to have separated from employment without timely payment and, for the reasons explained below with respect to the named Plaintiffs, that asserted injury meets the requirements of Article III standing.  The disputed issue here is whether the named Plaintiffs'

62 (cleaned up).

## I.     Article III Standing

All four named Plaintiffs have standing to pursue a waiting time penalties claim. The SAC alleges that Plaintiff Synigal voluntarily separated from employment and Plaintiffs DiMercurio, Langlitz, and Gaeth were discharged. (Dkt. No. 122 ¶¶ 11–14.) They allege that they should have been paid for their standby time throughout their employment, but were not; on that basis, they allege that Defendant failed to pay all wages earned and unpaid when their employment ended. Each Plaintiff therefore alleges a monetary injury that is concrete, particularized, and actual; it is "real, and not abstract." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) ("[C]ertain harms readily qualify as concrete injuries under Article III. The most obvious are traditional tangible harms, such as physical harms and monetary harms. If a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III.").

Defendant argues that Plaintiffs have suffered no concrete harm because they released any waiting time penalties in the *Berlanga* settlement.[4] Because their claims are released, they have no legal entitlement to waiting time penalties, and thus no monetary injury. This argument turns the jurisdictional question of Article III standing into a merits question, essentially requiring Plaintiffs to prevail on this claim before they can assert a threshold injury. But "[t]he jurisdictional question of standing precedes, and does not require, analysis of the merits. Standing in no way depends on the merits of the contention that particular conduct is illegal." *Equity Lifestyle Props., Inc. v. Cnty. of San Luis Obispo,* 548 F.3d 1184, 1189 n.10 (9th Cir. 2008) (cleaned up); *see Melendres*, 784 F.3d at 1262 ("[Plaintiffs] did not lose their individual standing simply because the district court resolved their constitutional claims in Defendants' favor."). The *Berlanga* release presents a question of whether Plaintiffs can legally recover, not whether they allege a concrete injury.

Accordingly, the named Plaintiffs have demonstrated their standing to bring a waiting time

---

claims are typical and adequate to represent the class. *See Melendres*, 784 F.3d at 1262.
[4] *Berlanga v. Equilon Enters., LLC*, No. 3:17-cv-00282-MMC (N.D. Cal. filed Jan. 19, 2017).

1 penalties claim. *See Melendres*, 784 F.3d at 1261–62.

**II.     Rule 23(a)**

"[R]epresentative parties who have a direct and substantial interest have standing; the question whether they may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation." *Melendres*, 784 F.3d at 1262. The class certification approach asks whether "the named plaintiffs' claims . . . implicate a significantly different set of concerns than the unnamed plaintiffs' claims." *Id.* at 1263 (cleaned up). "[W]e must examine the questions realistically: we must reject the temptation to parse too finely, and consider instead the context of the inquiry." *Id.* (citation omitted).

The proposed sub-classes, separated by date, include employees who were discharged and therefore have rights under Section 201 as well as employees who quit voluntarily and have rights under Section 202. Defendant argues that each named Plaintiff either was discharged or quit, not both, and thus only shares a set of concerns with class members who separated from employment in the same manner.

Based on the construction of the statute, the Court concludes that Plaintiffs' waiting time penalties claim arises from Section 203, which applies to employees irrespective of how they separated from employment. Section 203 creates the cause of action that allows an employee to recover such penalties:

> (a) If an employer willfully fails to pay . . . any wages of an employee *who is discharged or who quits*, the wages of the employee *shall continue as a penalty from the due date thereof* at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days. An employee who secretes or absents themselves to avoid payment to them, or who refuses to receive the payment when fully tendered to them, including *any penalty then accrued under this section*, is not entitled to *any benefit under this section* for the time during which the employee so avoids payment.
>
> (b) Suit may be filed for these penalties at any time before the expiration of the statute of limitations on an action for the wages from which the penalties arise.

Cal. Lab. Code § 203 (emphasis added). By contrast, Sections 201 and 202 prescribe the relevant "due date thereof," *id.*:

> If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately.
>
> . . .
>
> If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

*Id.* §§ 201(a), 202(a). Sections 201 and 202 do not provide Plaintiffs' cause of action. Only Section 203 entitles them to their requested relief: 30 days of unpaid wages "as a penalty" for Defendant's failure to comply with Section 201 or 202. *Id.* § 203(a); *see Pineda v. Bank of Am., N.A.*, 241 P.3d 870, 873–78 (Cal. 2010) (discussing relationship between Sections 201, 202, and 203).

Some district courts have held that Section 201 and 202 claims require different named plaintiffs, but their reasoning is not persuasive. *See McGhee v. Tesoro Refining & Mktg. Co. LLC*, 440 F. Supp. 3d 1062, 1072 (N.D. Cal. 2020) (holding that Sections 201 and 202 are separate "injuries" and dismissing named plaintiff's waiting time penalties claim "to the extent that it relies on an injury that he did not himself suffer"); *Segal v. Aquent LLC*, No. 18cv346-LAB (JLB), 2018 WL 4599754, at *6 (S.D. Cal. Sept. 24, 2018) (holding that discharged named plaintiff "has no standing to sue" under Section 202 "on behalf of quitting employees"). These cases misperceive the nature of the injury. The relevant injury underlying a waiting time penalties claim is not that the employee's employment ended by discharge or quitting, but rather that the employee was not timely paid. From that vantage, employees who were discharged or who quit have suffered exactly the same monetary injury. *See Hall v. W. Refining Retail, LLC*, No. 5:19-cv-00855-VAP-SKx, 2019 WL 7940668, at *3 (C.D. Cal. Sept. 19, 2019) ("[Sections] 201 and 202 are claims for employees who were not timely paid all their wages by an employer upon separation from employment. The reason for the employee's separation from the employer is irrelevant for the purposes of §§ 201 and 202 and the harmful conduct is the employer's failure to pay [] wages timely.").

Because the waiting time penalties claim arises from Section 203, a named plaintiff who suffered the injury of not being timely paid at the separation of employment meets the typicality

6

1    and adequacy requirements to bring claims on behalf of others who suffered the same injury.

2    Thus, on "realistic[]" examination, *Melendres*, 784 F.3d at 1263, Plaintiff Synigal's claim does not

3    implicate a significantly different set of concerns than the claims of class members who were

4    discharged.  Nor do Plaintiffs DiMercurio, Langlitz, and Gaeth's claims implicate a significantly

5    different set of concerns than the claims of class members who quit.  *See Hall*, 2019 WL 7940668,

6    at *3.  To the contrary, the named Plaintiffs' claims implicate essentially identical concerns

7    because they share the same injury with unnamed class members: failure to be paid timely.  *See*

8    *Melendres*, 784 F.3d at 1263 ("[Defendant's] practices during saturation patrols, determined by

9    the district court to be unconstitutional, do not raise a significantly different set of concerns from

10   the same practices instituted during regular patrols. . . .  [T]he operative set of concerns is the

11   constitutional violations flowing from [Defendant's] policies that the district court found to apply

12   across the board to all traffic stops." (cleaned up)).

### III.     Rule 23(b)

To the extent that a Rule 23(b) analysis is required under the Ninth Circuit's class certification approach to "standing" concerns, the Court concludes that common questions of law and fact predominate on Plaintiffs' waiting time penalties claim.  *See* Fed. R. Civ. P. 23(b)(3).  As noted in the Court's order of August 30, 2021, the claim derives entirely from the reporting-time pay claim, which raises the predominant question of whether Defendant's standby system is lawful.  (Dkt. No. 116 at 15.)  The only substantial issue on this claim that may require individualized proof is whether each employee either was discharged or quit within the class period.  That is a "damages question" that does not overcome the predominance of the common question of law.  *Castillo v. Bank of Am., NA*, 980 F.3d 723, 730 (9th Cir. 2020).  Finally, for the reasons stated in the earlier order, a class action is superior to individual litigation on this claim.  (Dkt. No. 116 at 17–18.)

### CONCLUSION

Plaintiffs' motion for class certification on the waiting time penalties claim is GRANTED.  Accordingly, and together with the Court's order of August 30, 2021, (Dkt. No. 116 at 20):

Plaintiffs' claims for (1) reporting time pay, (3) wage statements, and (4) unfair business

practices are certified as to the following class:

> All Operators working at the refinery of Equilon Enterprises LLC dba Shell Oil Products US in Martinez, California, who were scheduled for standby at any time from June 4, 2015, four years prior to the filing of this complaint, up to and continuing through January 31, 2020.

Plaintiffs' claim for (2) waiting time penalties is certified as to the following sub-classes:

> <u>2016-2019 Waiting Time Penalties Sub-Class</u>
>
> All Class Members who have been employed and separated from employment (either by involuntary termination or resignation) at the refinery of Equilon Enterprises LLC dba Shell Oil Products US in Martinez, California, at any time from June 4, 2016 through June 3, 2019, and who, upon separation from employment, did not timely receive all wages owed as a result of reporting obligations.
>
> <u>2019-2020 Waiting Time Penalties Sub-Class</u>
>
> All Class Members who have been employed and separated from employment (either by involuntary termination or resignation) at the refinery of Equilon Enterprises LLC dba Shell Oil Products US in Martinez, California, at any time from June 4, 2019 through January 31, 2020, and who, upon separation from employment, did not timely receive all wages owed as a result of reporting obligations.

Weinberg, Roger & Rosenfeld A.P.C. and Leonard Carder LLP are appointed as class counsel.

**IT IS SO ORDERED.**

Dated: January 27, 2022

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge

8