KRISTINA L. HILLMAN, Bar No. 208599
JANNAH V. MANANSALA, Bar No. 249376
ROBERTA D. PERKINS, Bar No. 153074
CAITLIN GRAY, Bar No. 305118
ALEXANDER S. NAZAROV, Bar No. 304922
MAXIMILLIAN D. CASILLAS, Bar No. 311669
KARA L. GORDON, Bar No. 333379
WEINBERG, ROGER & ROSENFELD
1375 55th Street
Emeryville, CA  94608
Telephone:  (510) 337-1001
Facsimile:   (510) 337-1023
courtnotices@unioncounsel.net
khillman@unioncounsel.net
jmanansala@unioncounsel.net
rperkins@unioncounsel.net
cgray@unioncounsel.net
anazarov@unioncounsel.net
kgordon@unioncounsel.net
mcasillas@unioncounsel.net

AARON KAUFMANN, SBN 148580
DAVID POGREL, SBN 203787
AMANDA EATON,
LEONARD CARDER, LLP
1999 Harrison Street, Suite 2700
Oakland, CA  94612
Telephone: (510) 272-0169
Facsimile:  (510) 272-0174
akaufmann@leonardcarder.com
dpogrel@leonardcarder.com
aeaton@leonardcarder.com

Attorneys for the Class and Plaintiffs/Class Representatives

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCO DIMERCURIO, CHARLES GAETH, JOHN LANGLITZ, and MALCOLM SYNIGAL on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>EQUILON ENTERPRISES LLC dba SHELL OIL PRODUCTS US, and DOES 1 through and including 25,<br><br>Defendants. | Case No.  3:19-cv-04029-JSC<br><br>[*Assigned for all purposes to the Honorable Jacqueline Scott Corley*]<br><br>**NOTICE OF PLAINTIFFS/CLASS REPRESENTATIVES' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:      October 6, 2022<br>Time:     9:00 a.m.<br>Before:   Hon. Jacqueline S. Corley<br>Courtroom: 8 |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ................................................................................... 1
MEMORANDUM OF POINTS & AUTHORITIES ............................................................... 2
I.    INTRODUCTION ........................................................................................................... 2
II.   BACKGROUND ............................................................................................................. 3
      A.    Plaintiffs' Factual Allegations ............................................................................. 3
      B.    Procedural Background ....................................................................................... 3
III.  PROPOSED SETTLEMENT ......................................................................................... 5
      A.    Settlement Class Definitions ............................................................................... 5
      B.    Plan of Allocation ................................................................................................ 5
            1.    Net Settlement Fund & Allocation .......................................................... 5
            2.    LWDA Payment ....................................................................................... 6
            3.    Attorneys' Fees and Litigation Expenses ................................................ 6
            4.    Class Representative Service Awards ..................................................... 6
            5.    Settlement Administration Fees and Proposed Administrator ............... 7
            6.    Distribution Plan and Possible Cy Pres Allocation ................................. 7
      C.    Class Settlement Notice Procedure ..................................................................... 7
IV.   ARGUMENT ................................................................................................................... 8
      A.    Preliminary Approval is Appropriate Because the Settlement is Fair, Reasonable and Adequate ............................................................................ 8
      B.    The Settlement is the Product of Informed, Non-Collusive Negotiation .................. 9
      C.    The Settlement Falls Within the Range of Possible Approval ................................. 9
            1.    The Strength of the Class Case and the Risk of Further Litigation Support Preliminary Approval ............................................................. 9
            2.    The Settlement Consideration is Fair ................................................... 11
            3.    The Planned Allocation Is Fair .............................................................. 11
            4.    The PAGA Claim Allocation is Fair ..................................................... 11
            5.    The Proposed Service Awards Are Reasonable, and Are Subject to Court Review ......................................................................................... 12
            6.    Attorneys' Fees and Costs that Class Representatives Will Request Are Reasonable ................................................................................... 13
            7.    Class Action Fairness Act Notice ......................................................... 14
      D.    The Proposed Notice is the Best Notice Practicable ........................................ 14
V.    CONCLUSION ............................................................................................................. 15

## TABLE OF AUTHORITIES

**CASES**

*Boyd v. Avanquest N. Am., Inc.*,
   No. 12-cv-04391-WHO, 2015 WL 4396137 (N.D. Cal. July 17, 2015) ........................................ 8

*Chu v. Wells Fargo Invs., LLC*,
   Nos. C 05-4526 MHP, C 06-7924 MHP, 2011 WL 672645 (N.D. Cal. Feb. 16, 2011) .............. 13

*Churchill Village, LLC v. General Electric*,
   361 F.3d 566 (9th Cir. 2004) ..................................................................................................... 14

*Clemens v. Hair Club for Men, LLC*,
   No. C 15-01431 WHA, 2016 WL 3442774 (N.D. Cal. June 23, 2016) ..................................... 12

*Covillo v. Specialtys Cafe*,
   No. C-11-00594 DMR, 2014 WL 954516 (N.D. Cal. Mar. 6, 2014) ......................................... 13

*Cuzick v. Zodiac U.S. Seat Shells, LLC*,
   No. 16-CV-03793-HSG, 2017 WL 4536255 (N.D. Cal. Oct. 11, 2017) ................................ 8, 13

*Deaver v. Compass Bank*,
   No. 13-CV-00222-JSC, 2015 WL 8526982 (N.D. Cal. Dec. 11, 2015) ..................................... 13

*Haralson v. U.S. Aviation Servs. Corp.*,
   383 F. Supp. 3d 959 (N.D. Cal. 2019) ............................................................................ 8, 11, 12

*Harris v. Vector Mktg. Corp.*,
   No. C-08-5198 EMC, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) .................................... 8, 13

*In re Bluetooth Headset Prod. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ..................................................................................................... 14

*In re Mercury Interactive Securities Litigation*,
   618 F.3d 988 (9th Cir. 2010) ..................................................................................................... 14

*O'Connor v. Uber Techs., Inc.*,
   201 F. Supp. 3d 1110 (N.D. Cal. 2016) ....................................................................................... 8

*Ohayon v. Hertz Corp.*,
   No. 5:11-cv-01662 EJD, 2012 WL 4936058 (N.D. Cal. Oct. 16, 2012) ................................... 15

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ............................................................................................... 12, 13

*Van Kempen v. Matheson Tri-Gas, Inc.*,
   No. 15-CV-00660-HSG, 2017 WL 3670787 (N.D. Cal. Aug. 25, 2017) .................................. 12

*Van Vranken v. Atlantic Richfield Co.*,
   901 F.Supp. 294 (N.D. Cal. 1995) ............................................................................................. 13

*Villegas v. J.P. Morgan Chase & Co.*,
   CV 09-00261 SBA EMC, 2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ................................... 9

*Ward v. Tilly's Inc.*
   31 Cal. App. 5th 1167 (2019) ...................................................................................................... 9

*Wolph v. Acer Am. Corp.*,
   No. 09-01314 JSW, 2013 WL 5718449 (N.D. Cal. Oct. 21, 2013) ........................................... 13

TABLE OF AUTHORITIES (cont'd)

**STATUTES**

28 U.S.C.
  § 1331 .................................................................................................................................. 3
  § 1332 .................................................................................................................................. 3
  § 1715 ................................................................................................................................ 14

Cal. Labor Code
  § 226 .................................................................................................................................. 10

Cal. Lab. Code
  § 2699 ................................................................................................................................. 8

# NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on Thursday October 6, 2022 at 9 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Hon. Jacqueline S. Corley, United States District Court for the Northern District of California, located at 450 Golden Gate Ave., San Francisco, California, in Courtroom 8, 19th Floor, Plaintiffs/Class Representatives MARCO DIMERCURIO, CHARLES GAETH, JOHN LANGLITZ, and MALCOLM SYNIGA ("Class Representatives") will and hereby do respectfully move this Court for preliminary approval of the proposed class action settlement and settlement of California Private Attorney General Act claims brought under the California Labor Code ("PAGA").

Plaintiffs/Class Representatives request that this Court enter an Order (1) granting preliminary approval to the proposed Class Action Settlement; (2) conditionally approving the PAGA settlement; (3) appointing CPT Group, Inc. ("CPT") as Settlement Administrator; (4) approving the form, content, and method of distribution of Notice of Class Settlement proposed by counsel to provide notice of the class settlement; and (5) scheduling a hearing regarding final approval of the proposed settlement, Class Counsel's request for attorneys' fees and costs, and Service Awards to the Class Representatives.

This motion is made on the ground that proposed settlement is the product of arm's length negotiations by qualified class counsel with the assistance of Chief Magistrate Judge Joseph C. Spero acting as settlement judge. Its terms are fair, reasonable and adequate in light of the risks the Plaintiffs and Class Members face in connection with continuing to litigate liability, and proof of damages. Defendant does not oppose this motion.

This motion is based on this Notice of Motion; the accompanying Memorandum of Points and Authorities; the Declaration of Aaron Kaufmann and exhibits thereto; the Declaration of Jannah Manansala; the Proposed Order; the Court's record in this action; all matters of which the Court may take notice, and any other such evidence, briefing, or argument that may be presented to the Court at or before the time of hearing.

# MEMORANDUM OF POINTS & AUTHORITIES

## I.   INTRODUCTION

Class Representatives seek preliminary approval of a $3.2 million settlement to state wage and hour claims on behalf of certified class of approximately 300 former Operators who worked for Defendant Equilon Enterprises LLC dba Shell Oil Products US ("Defendant" or "Shell") at the Shell Oil Refinery in Martinez, California. All the class claims arise out of the theory that Defendant violated California's law regarding reporting time pay by scheduling Operators for stand-by shifts for which they were not paid wages unless called to report to work at the refinery. Plaintiffs also aver a claim for penalties under California's Labor Code Private Attorneys General Act ("PAGA"). The settlement provides substantial relief to all members of the class of Operators that this Court has already certified and allocates a reasonable amount to resolve the PAGA claim.

The proposed settlement is the product of arm's length negotiations by experienced counsel, assisted by Chief Magistrate Judge Joseph C. Spero serving as settlement judge. It is fair, reasonable and adequate in light of the risks the Class Representatives and Class Members face in connection with continued litigation over liability, class membership, proof of damages, and other defenses asserted by Defendant. The net settlement fund contemplated under the terms of the Settlement Agreement represents approximately 70 percent of the aggregate reporting time pay incurred by the Class. Declaration of Aaron Kaufmann ISO Class Representatives' Motion for Preliminary Approval of Class Action and PAGA Settlement ("Kaufmann Decl."), ¶11. The Settlement thus represents approximately 37 percent recovery on the maximum value of the class claims, exclusive of Class Counsel's attorneys' fees and costs. When all wages, interest, and potential penalties are considered, Defendant's total exposure in this action is approximately $8.55 million. *Id.*

Accordingly, Class Representatives and Class Counsel request that the Court (1) grant preliminary approval to the proposed Class Action Settlement; (2) conditionally approve the PAGA settlement; (3) appoint CPT Group ("CPT") as Settlement Administrator; (4) approve the form, content, and method of distribution of the Notice of Class Settlement; and (5) schedule a hearing regarding final approval of the proposed Settlement, Class Counsel's request for attorneys' fees and costs, and service awards to the Class Representatives.

## II.   BACKGROUND

### A.   Plaintiffs' Factual Allegations

Plaintiffs allege Defendant Shell required operators at its Martinez refinery to be available for designated 12-hour standby shifts in addition to their regular 12-hour shifts. Third Amended Complaint, Dkt. No. 157, ¶ 2. Plaintiffs further allege Shell required operators on standby to be at the ready to receive calls during two 1.5-hour time periods, which commenced 30 minutes prior to the start of the scheduled standby shift and end an hour after the standby shift has started. If an operator was asked to work the scheduled standby shift during one of these two 1.5-hour time periods, the operator was required to report for duties at the refinery in Martinez within a time period not to exceed 2 hours. If an operator could not be reached during these 1.5-hour time periods, the operator was considered absent without leave and was subject to disciplinary action. If an operator was not contacted at all during these 1.5-hour time periods, the operator was not compensated at all by Shell, although the operator's activities had been significantly constrained. *Id.* at ¶ 3.

Effective February 1, 2020, Shell sold its refinery to Martinez Refining Company LLC. Consequently, all employees at the refinery—including all class members--were separated from their employment with Shell on January 31, 2020. Shell did not pay class members any of the accrued reporting time pay at the time of termination. Dkt. No. 157, ¶ 10.

### B.   Procedural Background

Plaintiffs filed this action in California state court on June 4, 2019. Plaintiffs brought a claim for failure to pay reporting time pay in violation of Industrial Welfare Commission ("IWC") Wage Order 1-2001 ("Wage Order"), and derivative claims for failure to pay all wages earned at termination in violation of Labor Code sections 200-203, failure to provide accurate itemized wage statements in violation of Labor Code sections 226 and 226.3, and violations of California's unfair competition law ("UCL"), Business and Professions Code sections 17200 et seq. Dkt. No. 1, Ex. A 19-31. Defendant removed the complaint to federal court based on the Class Action Fairness Act, 28 U.S.C. § 1332(d), and federal question jurisdiction under 28 U.S.C. § 1331. *Id.*

Plaintiffs filed the First Amended Complaint in October 2019, asserting their previous claims and adding a PAGA claim. Dkt. No. 18. Shell filed a motion to dismiss Plaintiffs' First Amended

Complaint on November 8, 2019 on the grounds that Section 301 of the Federal Labor Management Relations Act, 29 U.S.C. 185(a), preempted Plaintiffs' claims and Plaintiffs failed to state a claim for relief. Dkt. No. 19. On January 15, 2020, the Court denied Shell's motion. Dkt. No. 26. The Court rejected the preemption argument and Shell's contention that Plaintiffs failed to state a claim for which relief may be granted. *Id.*

The Parties participated in a settlement conference with Chief Magistrate Judge Joseph C. Spero on May 26, 2021, and had two additional settlement conferences on November 20, 2021, and June 14, 2022. Dkt. Nos. 98, 133, 161.

Plaintiffs filed a motion for class certification on April 9, 2021. Dkt. No. 90. On August 30, 2021, the Court granted class certification in part – finding that "Plaintiffs' satisfy the . . . requirements to certify a class action, except as to the waiting time penalty claim." Dkt. No. 116, 19:1-2).  On September 13, 2021, Defendant filed a Rule 23(f) Petition with the Ninth Circuit, seeking permission to appeal the Court's class certification order.  Plaintiffs filed their opposition on September 23, 2021 and the Ninth Circuit denied Defendant's Rule 23(f) Petition on December 10, 2021. Ninth Circuit Case No. 21-80098, Dkt. No. 3.

On September 13, 2021, Plaintiffs submitted a proposed Second Amended Complaint and supplemental briefing regarding the class certification of the waiting time penalties claim. Dkt. Nos. 122-123. On September 27, 2021, Shell submitted its response. Dkt. No. 125. On October 20, 2021, the Court granted Plaintiffs leave to amend. Dkt. No. 126. After supplemental briefing and oral argument, the Court granted certification of the remaining waiting time penalty claims on January 27, 2022. Dkt. No. 144.

On February 23, 2022, the Court approved of a class notice to be distributed to the class. Dkt. 154. Distribution of the notice was delayed while the parties resolved issues with the class list. On Jun 8, 2022, the Notice was sent to 301 Class Members; none of whom opted out. Kaufmann Decl. ¶12.

The parties stipulated to filing the operative Third Amended Complaint on April 15, 2022, to update the PAGA claim and clarify minor factual issues. Dkt. No. 157.

The parties participated in a settlement conference with Judge Spero on June 9, 2022, and

subsequently reached a settlement agreement that is the subject of this motion.

### III. PROPOSED SETTLEMENT

The details of the Settlement are set forth in the Class Action Settlement Agreement and Release. Kaufmann Decl., Ex. 1 (hereinafter the "Settlement Agreement" or "SA"). A summary is set forth below:

#### A. Settlement Class Definitions

The settlement class is the same as the class the Court has already certified, which is defined as: "All Operators working at the refinery of Equilon Enterprises LLC dba Shell Oil Products US in Martinez, California, who were scheduled for standby at any time from June 4, 2015, four years prior to the filing of this complaint, up to and continuing through January 31, 2020."

This class was further defined to include the following subclasses:

**2016 to 2019 Waiting Time Penalties Sub-Class:** All Class Members who have been employed and separated from employment (either by involuntary termination or resignation) at the refinery of Equilon Enterprises LLC dba Shell Oil Products US in Martinez, California, at any time from June 4, 2016 through June 3, 2019, and who, upon separation from employment, did not timely receive all wages owed as a result of reporting obligations.

**2019 to 2020 Waiting Time Penalties Sub-Class:** All Class Members who have been employed and separated from employment (either by involuntary termination or resignation) at the refinery of Equilon Enterprises LLC dba Shell Oil Products US in Martinez, California, at any time from June 4, 2019 through January 31, 2020, and who, upon separation from employment, did not timely receive all wages owed as a result of reporting obligations.

#### B. Plan of Allocation

##### 1. Net Settlement Fund & Allocation

The Net Settlement Fund is estimated to be approximately $2,000,000, which is $3,200,000 less payments to the LWDA to resolve the PAGA penalty claims, attorneys' fees and costs, class representative service awards, and settlement administration fees. Kaufmann Decl. ¶¶7-8. The Net Settlement Fund will then be disbursed as Individual Settlement Shares for Class Members based on the number each Class Member's standby shifts that were not activated for work (i.e., "Standby

Shifts"), as reflected in Defendant's records. SA § III.D.1. These settlement shares will represent compensation for each class member's accrued reporting time pay and interest thereon, waiting time penalties under Labor Code section 203, penalties for pay statement violations under Labor Code 226, and their share of PAGA penalties.

### 2. LWDA Payment

The parties have agreed to allocate $50,000 to resolve the PAGA penalty claims. SA § III.C.3. In accord with the PAGA, Labor Code section 2699(i), the Defendants will pay the California Labor & Workforce Development Agency ("LWDA") $37,500 (75 percent of a $50,000 PAGA penalty allocation). *Id.* The parties will provide a copy of the Agreement to the LWDA at the time the Agreement is submitted to the Court for approval per Cal. Labor Code §2699(1)(2). Kaufmann Decl. ¶16.

### 3. Attorneys' Fees and Litigation Expenses

The Settlement Agreement permits Class Counsel to submit an application for an award of attorneys' fees and costs in an amount up to $1,066,666.67 (one-third of the gross settlement amount, SA § III.C.2, which is approximately 25 percent less than their collective lodestar as of August 25, 2022. Kaufmann Decl. ¶15; Manansala Decl. ¶ 4. In addition, Class Counsel will seek reimbursement of up to $35,000 for out of pocket expenses paid to directly advance the subject litigation. Kaufmann Decl. ¶15; Manansala Decl. ¶ 4.

### 4. Class Representative Service Awards

The Settlement provides that each of the four Class Representatives may petition the Court for service awards of up to $7,500 each, representing $30,000 in the aggregate. SA § III.C.1. This is in addition to any distribution to which they may otherwise be entitled to as class members. These amounts are to compensate the Class Representatives for (1) the significant time and effort they have spent on behalf of the Class, including assisting in the investigation, participating in extensive discovery, consulting with counsel regarding all aspects of the litigation and settlement, and participating in each of the settlement conferences, and (2) the risk incurred by suing a former employer, a fact that is easily obtainable through the Court's records.

### 5. Settlement Administration Fees and Proposed Administrator

Subject to Court approval, the parties propose CPT Group to serve as the Settlement Administrator. SA § I.U. CPT served as class notice administrator. *Id.* CPT estimates that it will cost approximately $10,000 to administer the settlement. Kaufmann Decl. ¶14.

### 6. Distribution Plan and Possible Cy Pres Allocation

The settlement provides that Class Members will be sent their individual settlement payments within 35 days of the Effective Date of the order granting final approval, SA § III.D, and Class Members will have six months to deposit their checks. SA § III.E.5. Class members do *not* need to file a claim to receive payment. After 60 days, the Settlement Administrator will provide notice as to the total amount of funds left were not deposited, and will provide notice by email to Class Members who did not cash the initial check so that those Class Members can inform the Settlement Administrator of any change of address. SA § III.E.5. The Settlement Administrator will also use updated forwarding addresses to obtain the most recent address available. *Id.* If, after this second distribution, at least $25,000 is remaining, the Settlement Administrator will issue an additional distribution to the Class Members who deposited their initial checks. *Id*. If less than $25,000 is remaining, the Parties ask that the Court order that the remainder is paid to East Bay Community Law Center ("EBCLC") as a *cy pres* beneficiary. *Id.* EBCLC is a nonprofit legal services provider that serves low-income residents and communities in housing, consumer, community development, employment matters and other legal matters. Kaufmann Decl. ¶7.f, Exh. 2.

### C. Class Settlement Notice Procedure

Having already distributed Class Notice, CPT has the Class Members' contact information and including last known addresses. CPT, serving as the Settlement Administrator, will send the Class Settlement Notices to Class Members via first-class mail and email within no more than 25 days of the Preliminary Approval date. SA § III.E.2.f. For undeliverable Class Settlement Notices, the Settlement Administrator will attempt to locate the Class Members' updated addresses through people-finder software, or equivalent program, and skip-trace searches. SA §§ III.E.2.e, g.

The Notices, as proposed here, would include: (1) contact information for Class Counsel; (2) the website address with links to case documents; (3) instructions on how to access the case docket

via PACER or in person; (4) the date of the final approval hearing; (5) instructions on how to opt-out and associated deadlines; (6) the deadline for submission of any objections; and (7) an estimate of the expected total settlement amount that the Class Member will receive. SA, Exh. A.

## IV. ARGUMENT

### A. Preliminary Approval is Appropriate Because the Settlement is Fair, Reasonable and Adequate

This Court should determine whether the proposed class action settlement warrants preliminary approval by reviewing the fairness, reasonableness and adequacy of the settlement terms; if it so finds, it should direct that notice be sent to proposed class members, reserving closer scrutiny for the final approval hearing. *See Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *7 (N.D. Cal. Apr. 29, 2011). *See also Boyd v. Avanquest N. Am., Inc.*, No. 12-cv-04391-WHO, 2015 WL 4396137, at *2 (N.D. Cal. July 17, 2015) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)). "Courts may preliminarily approve a settlement and direct notice to the class if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not grant improper preferential treatment to class representatives or other segments of the class; and (4) falls within the range of possible approval." *Cuzick v. Zodiac U.S. Seat Shells, LLC*, No. 16-CV-03793-HSG, 2017 WL 4536255, at *5 (N.D. Cal. Oct. 11, 2017).

Additionally, the Court must consider the PAGA settlement because "a settlement of PAGA claims compromises a claim that could otherwise be brought by the state." *Haralson v. U.S. Aviation Servs. Corp.*, 383 F.Supp. 3d 959, 971 (N.D. Cal. 2019) (citations omitted); *see also* Cal. Lab. Code § 2699(l)(2). Although there is little state law governing the review of settlements under PAGA, the Labor Workforce Development Agency ("LWDA") has advised Courts to "evaluate whether the settlement meets the standards of being 'fundamentally fair, reasonable, and adequate' with reference to the public policies underlying the PAGA," *O'Connor v. Uber Techs., Inc.*, 201 F.Supp.3d 1110, 1133 (N.D. Cal. 2016) (quoting LWDA Response), and courts have generally applied this standard. *Haralson*, 383 F.Supp.3d at 971–72. As part of this evaluation, where PAGA claims are settled together with claims under the Labor Code, "courts have also looked to the interplay of the two

recoveries to determine whether PAGA's purposes have been served," recognizing that providing fair compensation to workers both serves to enforce the class's rights under the Labor Code and deter employers from violating the Labor Code in the future. *Id.* at 972. Claims under PAGA must also be submitted to the LWDA for review. *Id.* at 971. Prior to the hearing of this motion, the parties will have submitted the settlement to the LWDA. Kaufmann Decl. ¶16.

### B. The Settlement is the Product of Informed, Non-Collusive Negotiation

Adequate discovery and the use of an experienced mediator support the conclusion that settlement negotiations were informed and non-collusive. *See Villegas v. J.P. Morgan Chase & Co.*, CV 09-00261 SBA EMC, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012). This Settlement Agreement was reached through arm's-length negotiations by experienced counsel familiar with the applicable law, class action litigation, and the facts of this case. Kaufmann Decl. ¶¶5-6. On June 9, 2022, the Parties participated in a Settlement Conference with the assistance of Chief Magistrate Judge Joseph C. Spero and reached this agreement the next day. Kaufmann Decl. ¶6. Prior to settling, the parties engaged in extensive investigation including substantial document production, numerous depositions, class certification, and two prior settlement conferences. Kaufmann Decl. ¶3; Dkt. Nos. 116, 144.

### C. The Settlement Falls Within the Range of Possible Approval

#### 1. The Strength of the Class Case and the Risk of Further Litigation Support Preliminary Approval

Although Class Representatives have a strong case on the merits, there are a number of legal and practical risks that Class Representatives face by continuing to pursue litigation. Defendant has a number of arguments that it asserts preclude liability in this case.

First, Defendant will argue that Operators are not entitled to reporting time pay, because unlike the plaintiffs in *Ward v. Tilly's Inc.*, the operators were not required to "call in" or present themselves for work. 31 Cal. App. 5th 1167 (2019). Rather, Operators faced the possibility that Shell could call them and require they come to the refinery to cover a short-notice absence. Class Representatives contend this is a distinction without meaning. Whether the Operators called in or

were expected to answer a call notifying them they needed to report for a shift, Defendant's standby policy constrained the Operators' activities on days they were not otherwise scheduled to work and they were entitled to reporting time pay.

There are currently three other cases pending against refineries located within the Northern District alleging similar claims by Operators. The three other cases are *Wood v. Marathon*, venued in the Northern District before Judge Yvonne Gonzalez Rogers, and *Bradford v. Chevron* and *DiMercurio v. Martinez Refining*, both venued in the Contra Costa Superior Court. The outcome and proceedings in these cases may impact the central legal disputes in this lawsuit, increasing the potential risk of continued litigation for both sides.

Further, the Class Representatives' waiting time and wage statement penalties are derivative of Class Representatives' reporting time claims. Although Plaintiffs have been granted class certification and believe they have a strong chance of prevailing on the merits, if the Court ruled in Defendant's favor on the reporting time claims, then their waiting time and wage statement penalties also fail. If the Operators were entitled to reporting time pay, then they were never paid in full, and are entitled to 30 days' wages in waiting time penalties as well as wage statement penalties because they did not receive itemized wage statements in compliance with section 226 of the California Labor Code. The interdepended nature of these claims increases the risk for both sides if they proceed with the litigation.

Even if the Class prevails on the reporting time claims, Defendant will argue that it is not liable for derivative wage statement penalties because its actions were not taken "knowingly and intentionally." Cal. Lab. Code § 226(e)(1). It will argue that the law was unclear as to whether its standby policy constituted reporting time and that an employer cannot willfully fail to comply with the law if that law is unclear.

Without conceding that any adverse rulings would be justified, Class Representatives recognize the risk of such outcomes and weighed them against the potential recoveries. Class Representatives estimate that, if they prevailed on all potential claims, they could recover:

- reporting time pay of approximately $3,853,728;
- waiting time penalties of approximately $3,917,440;

- wage statement penalties of approximately $327,100; and
- through the PAGA, civil penalties of approximately $449,750 (assuming $100 for each reporting time violation and $250 for each wage statement violation).

Kaufmann Decl. ¶10. Class Counsel believe the $3.2 million settlement is eminently reasonable in light of the potential risks, including the significant risk due to the interconnected nature of the claims. Kaufmann Decl. ¶13; Manansala Decl. ¶ 3.

### 2. The Settlement Consideration is Fair

Here, the Settlement will result in payment of a fair and reasonable award to class members, particularly in light of the litigation risks. The Settlement affords relief to Class Members who likely would never have filed individual claims. The net amount to be paid to these Operators under the proposed settlement (after payment of the state's share of PAGA penalties, class counsel fees and expenses, Class Representative Service Awards, and settlement administration costs) will be roughly $2 million. Kaufmann Decl. ¶11. The Operators will recover approximately $6,700, or $84 per standby shift, through the class-action portion of the settlement. Kaufmann Decl. ¶9. In sum, the payments will result in the members of the class recovering around 72 percent of their accrued wages and approximately 37 percent recovery on the maximum value of the Action, exclusive of Class Counsel's attorneys' fees and costs. Kaufmann Decl. ¶11. Under the circumstances, the amount of the settlement is fair, adequate and reasonable.

### 3. The Planned Allocation Is Fair

The plan for allocation of the Net Settlement is also fair and reasonable. The Settlement Agreement provides that the settlement fund shall be allocated based on the number of standby shifts assigned to each Operator for which they did not receive reporting time pay. Thus, Class Members' share of the settlement is directly proportional to the harm they suffered.

### 4. The PAGA Claim Allocation is Fair

The resolution to the PAGA claims for $50,000 is fair and reasonable. Courts regularly approve PAGA settlements where the settlement amount is over one percent of the total value of the PAGA claim. *Haralson*, 383 F.Supp.3d at 973. Here, the PAGA settlement allocation represents over 11 percent of the total possible exposure for PAGA penalties, assuming the Court awarded the

maximum $100 penalty per reporting time violation and $250 per wage statement violation. See Kaufmann Decl. ¶¶10-11. Other courts consider the proportion of the PAGA allocation to the overall settlement. *Haralson*, 383 F.Supp.3d at 973 (citing *Van Kempen v. Matheson Tri-Gas, Inc.*, No. 15-CV-00660-HSG, 2017 WL 3670787, at *10 (N.D. Cal. Aug. 25, 2017) (granting final approval of $ 5,000 PAGA penalty from $ 370,000 settlement, or 1.4 percent)); *see also Clemens v. Hair Club for Men, LLC*, No. C 15-01431 WHA, 2016 WL 3442774, at *1 (N.D. Cal. June 23, 2016) (approving $5,000 PAGA penalty from a $500,000 settlement, or 1 percent). Here, the $50,000 PAGA settlement represents approximately 1.6 percent of the total $3.2 million settlement. Therefore, applying either test, the PAGA settlement is fair and reasonable.

Even when the PAGA settlement is less than one percent of the total possible recovery it may be fair and reasonable. In those circumstances, courts consider both the risk that the court will use its discretion to award a fraction of the potential exposure, and whether an accompanying class action settlement provides "relatively substantial" benefits to class members. *Haralson*, 383 F.Supp.3d at 973. Here, the settlement does provide significant recovery to the Class Members by awarding them approximately $84 per standby shift.

Further, the plan of allocation for the PAGA portion of the settlement is also reasonable. The PAGA penalties will be allocated to each Class Member based on the number standby shifts they were assigned. Thus, the Operators' benefit from the PAGA penalties is directly proportionate to their share of the injury suffered.

### 5. The Proposed Service Awards Are Reasonable, and Are Subject to Court Review

The settlement provides that Class Representatives Marco DiMercurio, Charles Gaeth, John Langlitz, and Malcolm Synigal may petition the Court for service awards of up to $7,500 each. Service or incentive awards are typical in class action cases. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). In evaluating incentive awards, courts may consider "1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof)

enjoyed by the class representative as a result of the litigation." *Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 299 (N.D. Cal. 1995). This Court has already concluded that incentive awards are not "per se unreasonable," and the allocation of an incentive award in a settlement does not weigh against preliminary approval. *Cuzick*, 2017 WL 4536255, at *6. In the Northern District, incentive awards for class representatives for $5,000 are presumptively reasonable. *Harris v. Vector Marketing Corp.*, 2012 WL 381202, at *7 (N.D. Cal. 2012). The typical range for incentive awards in the Northern District is $2,000 to $10,000. *See*, e.g., *Covillo v. Specialtys Cafe*, No. C-11-00594 DMR, 2014 WL 954516, at *8 (N.D. Cal. Mar. 6, 2014) (ordering an $8,000 incentive award for each of the three named plaintiffs); *Wolph v. Acer Am. Corp.*, No. 09-01314 JSW, 2013 WL 5718449, at *6 (N.D. Cal. Oct. 21, 2013) (ordering a $2,000 incentive award for each named plaintiff); *Chu v. Wells Fargo Invs., LLC*, Nos. C 05-4526 MHP, C 06-7924 MHP, 2011 WL 672645, at *5 (N.D. Cal. Feb. 16, 2011) (awarding a $10,000 incentive award to two named plaintiffs). Higher incentive awards are "particularly appropriate" in wage and hour class actions like the present case where plaintiffs face reputational risks from bringing a case against their employer. *Deaver v. Compass Bank*, No. 13-CV-00222-JSC, 2015 WL 8526982 (N.D. Cal. Dec. 11, 2015) (citing *Rodriguez*, 563 F.3d at 958-59).

Here, Class Counsel believes that Service Awards to the four class representatives in the amounts requested is consistent with a fair, just and adequate settlement. Class Representatives have been actively engaged in this case for more than three years. During this time, each of them sat for a deposition, and they participated in three all-day settlement conferences. Kaufmann Decl. ¶5. Class Representatives will provide supporting declarations at final approval describing their efforts in this case, amounts of time spent serving the class, and risks incurred.

### 6. Attorneys' Fees and Costs that Class Representatives Will Request Are Reasonable

The Settlement provides that, prior to the final approval hearing, Class Counsel may petition the Court for an award of fees not to exceed one-third of the Gross Settlement Amount as their Class Counsel Fees Payment, or $1,066,666.67 in addition to litigation expenses up $45,000. SA § III.C.2.

|   |   |
|---|---|
| 1 | Class Counsel submit that this provision is fair and reasonable given the significant time and expense that they have devoted to this case, the risk they have borne during this time, and the result that they have achieved for the proposed class, the aggrieved employees, and the members of the class. The amount requested is less than the "presumptively reasonable" lodestar amount of $1,422,804 through August 25, 2022. Kaufmann Decl. ¶15; Manansala Decl. ¶ 4. *See In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). "The 'lodestar method' is appropriate in class actions brought under fee-shifting statutes . . . where the legislature has authorized the award of fees to ensure compensation for counsel undertaking socially beneficial litigation." *Id.* |

Class Counsel shall file their application for fees and costs within 21 days of preliminary approval, so that Class Members can be fully informed of the fee request and have ample time to consider the request prior to the deadline for objecting and opting out. *See In re Mercury Interactive Securities Litigation*, 618 F.3d 988 (9th Cir. 2010).

### 7. Class Action Fairness Act Notice

Defendant is expected to issue notice of this Settlement as required by the Class Action Fairness Act under 28 U.S.C. § 1715 no later than 10 days after this proposed Settlement is filed with this Court. Defendant's CAFA notice will comply with the requirements of 28 U.S.C. § 1715(b).

### D. The Proposed Notice is the Best Notice Practicable

Under Rule 23(e)(1) of the Federal Rules of Civil Procedure, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Rule 23(c)(2)(B) provides: "[t]he notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23 (c)(3)." Notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and come forward and be heard." *Churchill Village, LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004).

The parties have agreed on the language of the Settlement Notice, which is attached as an exhibit to the Settlement Agreement. SA, Exh. A.

The parties have agreed, subject to Court approval, to have the Settlement Administrator mail notice via first class mail within fifteen (15) days of receiving the Class List and Data. (SA § III.E.2.f.) Returned mail with forwarding addresses will be re-mailed while returned mail without forwarding addresses will be skip traced to get an updated address and then re-mailed. (SA § III.E.2.g.) This method meets the requirements of due process. *Ohayon v. Hertz Corp.,* No. 5:11-cv-01662 EJD, 2012 WL 4936058, at *5-6 (N.D. Cal. Oct. 16, 2012).

The Settlement Administrator will also establish a website—as referenced in the proposed Class Settlement Notice--where Class Members can obtain information about the settlement.

Accordingly, the proposed notice plan complies with Rule 23 and due process.

## V. CONCLUSION

In light of the forgoing, Class Representatives respectfully request that the Court grant the motion for preliminary approval of the class action settlement.

Respectfully submitted,

DATED:  August 30, 2022         LEONARD CARDER, LLP
                                 WEINBERG, ROGER & ROSENFELD

                                 By:   /s/ Aaron Kaufmann
                                        AARON KAUFMANN

                                 *Attorneys for Class Representatives and the Class*