KRISTINA L. HILLMAN, Bar No. 208599
JANNAH V. MANANSALA, Bar No. 249376
ROBERTA D. PERKINS, Bar No. 153074
CAITLIN GRAY, Bar No. 305118
ALEXANDER S. NAZAROV, Bar No. 304922
MAXIMILLIAN D. CASILLAS, Bar No. 311669
KARA L. GORDON, Bar No. 333379
WEINBERG, ROGER & ROSENFELD
1375 55th Street
Emeryville, CA  94608
Telephone:  (510) 337-1001
Facsimile:   (510) 337-1023
courtnotices@unioncounsel.net
khillman@unioncounsel.net
jmanansala@unioncounsel.net
rperkins@unioncounsel.net
cgray@unioncounsel.net
anazarov@unioncounsel.net
kgordon@unioncounsel.net
mcasillas@unioncounsel.net

AARON KAUFMANN, SBN 148580
DAVID POGREL, SBN 203787
AMANDA EATON,
LEONARD CARDER, LLP
1999 Harrison Street, Suite 2700
Oakland, CA  94612
Telephone: (510) 272-0169
Facsimile:  (510) 272-0174
akaufmann@leonardcarder.com
dpogrel@leonardcarder.com
aeaton@leonardcarder.com

Attorneys for the Class and Plaintiffs/Class Representatives

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCO DIMERCURIO, CHARLES GAETH, JOHN LANGLITZ, and MALCOLM SYNIGAL on behalf of themselves and others similarly situated,<br><br>            Plaintiffs,<br><br>     v.<br><br>EQUILON ENTERPRISES LLC dba SHELL OIL PRODUCTS US, and DOES 1 through and including 25,<br><br>            Defendants. | Case No.  3:19-cv-04029-JSC<br><br>[*Assigned for all purposes to the Honorable Jacqueline Scott Corley*]<br><br>**[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**<br><br>Date:        October 6, 2022<br>Time:       9:00 a.m.<br>Before:     Hon. Jacqueline S. Corley<br>Courtroom:     8 |

     Plaintiffs/Class Representatives Marco DiMercurio, Charles Gaeth, John Langlitz, and Malcolm Synigal ("Class Representatives"), and Defendant Equilon Enterprises LLC dba Shell Oil Products US ("Shell") ("Defendant"), by and through their respective counsel, appeared in front of this Court on September 29, 2022, on Plaintiffs/Class Representatives' Motion for Preliminary Approval of Class Action Settlement and Conditional Approval of the PAGA Settlement. There was no opposition to the motion. Class Representatives submitted the Class Action Settlement Agreement and Release (the "Settlement Agreement" or "SA"). Having considered the briefs, Settlement Agreement, counsels' oral argument, and the relevant statutory and case law, the Court GRANTS Plaintiffs/Class Representatives' Motion, ORDERS Notice of Class Settlement, and FINDS as follows:

## I.    INTRODUCTION

     Class Representatives seek preliminary approval of a $3.2 million class action and PAGA settlement for state wage and hour claims on behalf of a certified class of approximately 300 former Operators who worked for at Shell's Oil Refinery in Martinez, California. The proposed settlement is fair, reasonable, and adequate.

## II.    BACKGROUND

     Class Representatives brought this class action for Defendant's alleged failure to pay reporting time pay in violation of Industrial Welfare Commission ("IWC") Wage Order 1-2001 ("Wage Order"), and derivative claims for failure to pay all wages earned at termination in violation of Labor Code sections 200-203; failure to provide accurate itemized wage statements in violation of Labor Code sections 226 and 226.3; and violations of California's unfair competition law ("UCL"), Business and Professions Code sections 17200 et seq. (Dkt. No. 157 ¶¶ 38-58.) Class Representatives also asserted a claim under California's Private Attorneys General Act ("PAGA"), Labor Code section 2698. (*Id.* ¶¶ 59-64.)

     The Court granted Plaintiffs' motion for class certification in part on August 30, 2021, and after supplemental briefing and oral argument, the Court granted certification of the remaining waiting time penalty claims on January 27, 2022. (Dkt. No. 116 at 19:1-2, Dkt. No. 144.) On February 23, 2022, the Court approved of a class notice to be distributed to the class and the Notice

was sent to Class Members on June 8, 2022. (Dkt. No. 154; Declaration of Aaron Kaufmann ISO Plaintiffs/Class Representatives' Unopposed Motion for Preliminary Approval of Class Action and PAGA Settlement ("Kaufmann Decl."), ¶12.) No one opted out of the certified class in response to that Notice. (Kaufmann Decl. ¶12.)

The parties stipulated to filing the operative Third Amended Complaint on April 15, 2022. (Dkt. No. 157.)

On June 9, 2022, the parties participated in their third settlement conference with Chief Magistrate Judge Joseph C. Spero, at which they agreed to the major terms of the subject settlement. (Kaufmann Decl. ¶¶5-6.)  Subsequently, the parties memorialized the detailed terms of the settlement agreement in the parties' Joint Stipulation of Class Settlement and Release. (Kaufmann Decl. ¶6, Exhibit 1.)

### III.   THE PARTIES

Defendant Shell is a Delaware corporation headquartered in Houston, Texas. It does business in California and operated a refinery in Martinez, California through January 31, 2020. (Declaration of Linda Meagher ISO Defendant's Notice of Removal, Dkt. No. 3, ¶ 3.) The Class Representatives worked as Operators at Shell's Martinez Refinery between June 4, 2015, and January 31, 2020. (Declaration of Marco DiMercurio ISO Plaintiffs' Motion for Class Certification, Dkt. No. 90-21, ¶ 3; Declaration of Charles Gaeth ISO Plaintiffs' Motion for Class Certification, Dkt. No. 90-22, ¶ 3; Declaration of John Langlitz ISO Plaintiffs' Mot for Class Certification, Dkt. No. 90-23, ¶ 3; Declaration of Malcolm Synigal ISO Plaintiffs' Motion for Class Certification, Dkt. No. 90-24, ¶ 3.)

### IV.   COMPLAINT ALLEGATIONS

Shell employed Class Representatives as Operators at its refinery in Martinez, California. (Dkt. No. 157 ¶¶ 11-14.). The class allegations are that Operators were required to be available for designated 12-hour standby shifts in addition to their regular 12-hour shifts. (Dkt. No. 157, ¶ 2.) Shell required operators on standby to be at the ready to receive calls during two 1.5-hour time periods, which commenced 30 minutes prior to the start of the scheduled standby shift and end an hour after the standby shift has started. If an operator was asked to work the scheduled standby

shift during one of these two 1.5-hour time periods, the operator was required to report for duties at the refinery in Martinez within a time period not to exceed 2 hours. If an operator could not be reached during these 1.5-hour time periods, the operator was considered absent without leave and was subject to disciplinary action. If an operator was not contacted at all during these 1.5-hour time periods, the operator was not compensated at all by Shell, although the operator's activities had been significantly constrained. (*Id.* at ¶ 3.)

The class claims all arise from the allegation that Shell's standby policy and failure to pay Operators reporting time pay violated Industrial Welfare Commission ("IWC") Wage Order 1-2001 ("Wage Order"). As a result, the operative complaint avers, Shell failed to pay all wages earned at termination in violation of Labor Code sections 200-203; failed to provide accurate itemized wage statements in violation of Labor Code sections 226 and 226.3; and violated California's unfair competition law ("UCL"), Business and Professions Code sections 17200 et seq. (*Id.* at ¶¶ 38-58.) Class Representatives also asserted a claim under California's Private Attorneys General Act ("PAGA"), Labor Code section 2698. (*Id.* ¶¶ 59-64.)

### V.   SETTLEMENT AGREEMENT

The Settlement Agreement provides as follows:

<u>Class Definition</u>: All Operators working at the refinery of Equilon Enterprises LLC dba Shell Oil Products US in Martinez, California, who were scheduled for standby at any time from June 4, 2015, four years prior to the filing of this complaint, up to and continuing through January 31, 2020." (SA § 1.A.) The parties have represented that there are approximately 300 individuals who fall within the class definition. (Kaufmann Decl. ¶ 12.) This class was further defined to include the following subclasses:

> <u>2016 2019 Waiting Time Penalties Sub-Class:</u>  All Class Members who have been employed and separated from employment (either by involuntary termination or resignation) at the refinery of Equilon Enterprises LLC dba Shell Oil Products US in Martinez, California, at any time from June 4, 2016 through June 3, 2019, and who, upon separation from employment, did not timely receive all wages owed as a result of reporting obligations. SA § 1.A.

<u>2019 to 2020 Waiting Time Penalties Sub-Class</u>: All Class Members who have been employed and separated from employment (either by involuntary termination or resignation) at the refinery of Equilon Enterprises LLC dba Shell Oil Products US in Martinez, California, at any time from June 4, 2019 through January 31, 2020, and who, upon separation from employment, did not timely receive all wages owed as a result of reporting obligations. (*Id.*)

<u>Payment Terms:</u> Under the Settlement Agreement, Defendants have agreed to pay a gross Settlement Fund of $3,200,000. (SA § III.A.) $50,000 will be allocated to resolve claims raised under PAGA, of which $37,500 will be disbursed to the State of California, and $12,500 will be disbursed to the Class Members. (SA § III.C.3.) At least $2,000,000 will be distributed to Class Members to resolve claims under the Labor Code, subject to the Court's approval of: up to $1,066,666.67 in attorneys' fees of for Class Counsel; $35,000 to reimburse Class Counsel for litigation expenses; $10,000 for fees to the settlement administrator; and $30,000 in class representative service awards. (SA § III.C.2.)

The settlement will distribute average payments of approximately $6,700 to members of the class. (Kaufmann Decl. ¶ 9.) The payments will result in the members of the class recovering approximately 70 percent of the aggregate reporting time pay incurred by the Class, as calculated by Class Counsel. (Kaufmann Decl. ¶ 11.)

<u>Class Settlement Payments:</u> The Settlement Administrator will calculate Individual Settlement Shares for Class Members based on the number of each Class Member's standby shifts that were not activated for work ("Standby Shifts"), as reflected on Defendant's internal records. The Settlement Administrator shall calculate each Class Member's potential share of the Net Settlement Fund (i.e., the Class Member's Individual Settlement Amount) by calculating the Standby Shifts worked by the Class Member during the Class Period. The Individual Settlement Share allocation for each Class Member shall then be determined by dividing the total number of Standby Shifts (for all Settlement Class Members, aggregated) into the amount of the Net Settlement Fund to arrive at a Per-Shift Settlement Amount. The Individual Settlement Share for each Eligible Settlement Class Member shall be calculated by multiplying the Class Member's

1  Standby Shifts by the Per-Shift Settlement Share. The value of an Individual Settlement Share
2  attributable to any Settlement Class Member who opts out shall be allocated and distributed to all
3  Eligible Settlement Class Members (who did not opt out), on a pro rata basis. (SA § III.D.)

4  <u>Class Notice:</u> Upon preliminary approval, the Settlement Administrator, CPT, Inc.
5  ("CPT")—which distributed the Class Notice—is to send a notice to members of the class, using
6  first-class mail and, when available, e-mail. (SA § III.E.2, Exh. A.) Class Members are not required
7  to make a submission to participate in the class-action portion of the settlement or the PAGA
8  portion of the settlement. (SA, Exh. A, § 6.) In addition, the Settlement Administrator will establish
9  a website for Class Member inquiries. (SA, Exh. A, § 12.)

10  <u>Release:</u> The class will release all claims against Defendant that were alleged in the Action,
11  or which could have been alleged in the Action based on the same facts and circumstances as
12  alleged in the Action. (SA § III.F.2.) Each Class Representative will give Defendant a General
13  Release, releasing it of all claims. (SA § III.F.1.)

14  <u>Opt-Out Procedure:</u> The parties agree that any Class Member who does not wish to
15  participate in the class settlement must affirmatively opt out of the class and settlement by signing
16  and postmarking a written request for exclusion to the settlement administrator within 45 days from
17  the mailing of the class notice. (SA § III.E.2.d.)

## VI.   DISCUSSION

### A.   Preliminary Approval of Settlement of Class Action Claims and PAGA Claim

#### 1.   Legal Standard

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled ... only with the court's approval." "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, before a district court approves a class action settlement, it must conclude that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008). Federal courts in California also apply this same standard when considering approval of claims brought under PAGA. *Haralson v. U.S. Aviation Servs. Corp.*, 383 F.Supp.3d 959, 971 (N.D. Cal.

2019); *Dunn v. Tchrs. Ins. & Annuity Ass'n of Am.*, No. 13-CV-05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016); *O'Connor v. Uber Techs., Inc.*, 201 F.Supp.3d 1110, 1133 (N.D. Cal. 2016) (quoting LWDA Response).

Courts may preliminarily approve a settlement and direct notice to the class if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not grant improper preferential treatment to class representatives or other segments of the class; and (4) falls within the range of possible approval. *See In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007). Courts lack the authority, however, to "delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

### 2. Analysis

#### a. Settlement Process

The first factor the Court considers is the means by which the parties settled the action. A court must be satisfied that the parties "have engaged in sufficient investigation of the facts to enable the court to intelligently make ... an appraisal of the settlement." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. May 31, 2007). Courts thus have "an obligation to evaluate the scope and effectiveness of the investigation plaintiffs' counsel conducted prior to reaching an agreement." *Id.* Additionally, "[a]n initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Harris v. Vector Mktg. Corp.*, No. 08-cv-5198, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011).

Here, both parties engaged in significant formal discovery and were well informed of the facts of the case and risks of litigation before reaching a settlement. They believe that the settlement is fair, adequate, and reasonable. (Kaufmann Decl. ¶ 13; Manansala Decl. ¶ 3.) Further, the settlement was reached after a series of arm's-length settlement conference with Judge Spero. (Kaufmann Decl. ¶¶ 5-6.) The Court consequently finds that this factor weighs in favor of preliminary approval.

#### b. Preferential Treatment

The court next considers whether the Settlement Agreement provides preferential treatment

to any class member. The Ninth Circuit has instructed that district courts must be "particularly vigilant" for signs that counsel have allowed the "self-interests" of "certain class members to infect negotiations." *In re Bluetooth*, 654 F.3d at 947. For that reason, courts in this district have consistently stated that preliminary approval of a class action settlement is inappropriate where the proposed agreement "improperly grants preferential treatment to class representatives." *Tableware*, 484 F.Supp.2d at 1079.

      Here, the Settlement Agreement does not grant any preferential treatment. The class representatives will receive a settlement based on the same factors as all of the Class Members. Under the Settlement Agreement, each Class Member will receive their pro rata share of the Net Settlement Amount based on the number of standby shifts they were assigned during the class period less any applicable tax withholding for the one-half of the individual Class Settlement Payments classified as wages. (SA § III.D.) Although Class Counsel is requesting $7,5000 for each class representative, "[i]ncentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). Class Counsel contends that the incentive awards are justified given the class representatives' significant involvement in the case, including being deposed and participating in the multiple settlement conferences, and the reputational risk associated with wage and hour lawsuits. (Kaufman Decl. ¶¶ 4-5.) Further, the amount is within the typical range for incentive awards in the Northern District between $2,000 and $10,000. *See*, e.g., *Covillo v. Specialtys Cafe*, No. C-11-00594 DMR, 2014 WL 954516, at *8 (N.D. Cal. Mar. 6, 2014) (ordering an $8,000 incentive award for each of the three named plaintiffs); *Wolph v. Acer Am. Corp.*, No. 09-01314 JSW, 2013 WL 5718449, at *6 (N.D. Cal. Oct. 21, 2013) (ordering a $2,000 incentive award for each named plaintiff); *Chu v. Wells Fargo Invs., LLC*, Nos. C 05-4526 MHP, C 06-7924 MHP, 2011 WL 672645, at *5 (N.D. Cal. Feb. 16, 2011) (awarding a $10,000 incentive award to two named plaintiffs). "[T] the Court will ultimately determine whether [each named Plaintiff] is entitled to such an award and the reasonableness of the amount requested," therefore the presence of incentive awards is insufficient to deny preliminary approval. *Cuzick v. Zodiac U.S. Seat Shells, LLC*, No. 16-CV-03793-HSG, 2017 WL 4536255, at *6 (N.D. Cal. Oct. 11, 2017). Thus, this factor weighs in favor of preliminary approval.

### c. Settlement with Range of Possible Approval

The third factor that the Court considers is whether the settlement is within the range of possible approval. "To evaluate whether the settlement amount, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Cuzick*, 2017 WL 4536255, at *6. In other words, the Court is asked to evaluate the overall possible recovery available to the class, and the strength and weaknesses of the class case that could lead to less than full recovery after trial.

Here, Class Counsel estimates that the total possible value of the claims asserted in the class case on behalf of the approximately 300 Operators are roughly $8.55 million, of which approximately $3.9 million ($2,854,613 in reporting time pay and $999,115 in interest thereon) are alleged reporting time pay due, $4.2 million are waiting time penalties and statutory penalties recoverable by the class, and interest on those claims, and $450,000 in potential PAGA penalties. (Kaufmann Decl. ¶ 10.)

Class Counsel has provided cogent reasons why the proposed settlement of $3.2 million is within the range of possible approval. The settlement provides for significant recovery for the individual Class Members, who will recover at least 70 percent of their aggregate reporting time pay incurred and approximately 37 percent recovery on the maximum value of the Action, exclusive of Class Counsel's attorneys' fees and costs. (Kaufmann Decl. ¶ 10.) The discount of the total possible recovery makes sense in light of the legal and practical risks presented by this case. The class claims for wage statement and waiting time penalties depend on the reporting time pay claims, and Defendant will argue that its standby policy did not constitute reporting time, and, that given the uncertainty in the law, it had a good faith belief that it need not pay reporting time pay and thus should face no penalties.

### d. Obvious Defects

The fourth and final factor that the Court considers is whether there are obvious deficiencies in the Settlement Agreement. The Court finds no obvious deficiencies, and therefore finds that this factor weighs in favor of preliminary approval.

\* \* \*

Having weighed the relevant factors, the Court finds that the Settlement Agreement is fair, reasonable, and adequate, and GRANTS preliminary approval.

### B. Proposed Class Notice Plan

For Rule 23(b)(3) class actions, "the court must direct notice to the class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

The parties have agreed that a third-party settlement administrator will send class notice via first-class U.S. mail to each absent Class Member at their last known address, which Defendant has already provided and has already been updated by the administrator as a result of the class notice procedure already completed. (SA § III.E.2.) Any notice packets returned as undeliverable will be sent to any updated address provided with the returned mail. (*Id.*) Moreover, the administrator will conduct "skip tracing" to identify current addresses for returned notice packages. (*Id.*)

The parties have attached a copy of their proposed Class Settlement Notice to the Settlement Agreement. (SA § III.E.2.a, Exh. A-B.) In addition to describing the information required by Federal Rule of Civil Procedure 23, the notices also inform Class Members that class counsel "will request a maximum of $1,066,667 attorneys' fees, and litigation costs." (SA, Exh. A, § 4.) The notices also provide that Plaintiff "Class Counsel will request approval from the Court for a total $30,000 in service awards for the four Class Representatives for their efforts in pursuing this lawsuit, as well as their willingness to accept the risks of being a class representative" (*Id.*) The notice states that these motions will be made available on the class action website set up by the administrator. (SA, Exh. A, § 12.)

The Court finds that this is the best practicable form of notice under the circumstances.

### VII. CONCLUSION

IT IS HEREBY ORDERED that

1. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Settlement Agreement is preliminarily approved.
2. CPT is appointed as Settlement Administrator.
3. Notice of the proposed settlement, and the rights of Class Members, including the right to

opt out of the settlement, shall be given by mailing of the Notices appended to the Settlement Agreement by first class mail, postage prepaid, to the Class Members.

4. A hearing shall be held before this Court on _____, 2022 at ____ a.m./p.m. to consider whether the settlement should be given final approval by the Court:

   a. Written objections by Class Members to the proposed settlement will be considered if delivered on or before the deadline provided by the Settlement Agreement;

   b. At the Final Approval Hearing, Class Members may be heard orally in support of or in opposition to the settlement;

   c. Class Counsel and counsel for Defendant should be prepared at the hearing to respond to objections filed by Class Members, and to provide other information as appropriate, bearing on whether or not the settlement should be approved; and

   d. At the Final Approval Hearing, the Court shall consider any motions or applications for attorneys' fees, costs and litigation expenses, and incentive payments to the Class Representatives, consistent with the Settlement Agreement, and any such motions shall be filed with the Court no more than 30 days before the deadline for filing objections.

5. In the event the Effective Date occurs, all Class Members will be deemed to have forever released and discharged the released claims. In the event that the Effective Date does not occur for any reason whatsoever, the Settlement Agreement shall be deemed null and void and shall have no effect whatsoever.

6. Pending further order of the Court, all proceedings in this matter except those contemplated herein and in the Settlement Agreement are stayed.

7. The Court expressly reserves the right to adjourn or continue the Final Approval Hearing without further notice to the Class.

Date: _____, 2022

_____
Honorable Jacqueline S. Corley
United States District Court Judge