UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCO DIMERCURIO, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>EQUILON ENTERPRISES LLC,<br><br>Defendant. | Case No. 19-cv-04029-JSC<br><br>**ORDER GRANTING PRELIMINARY APPROVAL OF SETTLEMENT**<br><br>Re: Dkt. No. 171 |

Before the Court is Plaintiffs' motion for preliminary approval of class action settlement. (Dkt. No. 171; *see* Dkt. Nos. 172, 175, 178, 179, 180.)[1] After carefully considering the unopposed motion, supporting documents, and post-hearing submissions, and with the benefit of oral argument on October 20, 2022, the Court GRANTS the motion.

**COMPLAINT ALLEGATIONS**

Defendant ("Shell") owned and operated an oil refinery in Martinez, California. (Dkt. No. 157 ¶ 2.) The four Class Representatives worked as operators at the refinery until it was sold on January 31, 2020. (*Id.* ¶¶ 10–14.) Shell required operators to be available for designated 12-hour standby shifts in addition to their regular 12-hour shifts. (*Id.* ¶ 2.) There were two 1.5-hour standby periods each day. (*Id.* ¶¶ 3, 5.) During the standby period, operators had to be reachable by phone in case Shell called the operator to cover an unscheduled absence. (*Id.* ¶ 3.) If called in, the operator had to arrive at the refinery within two hours. (*Id.*) If not called in, the operator was not paid. (*Id.* ¶¶ 3, 9.)

The operative complaint asserts claims for "Failure to Pay Reporting Time Pay" in

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers placed at the top of the documents.

violation of California Industrial Welfare Commission Wage Order 1-2001; "Failure to Pay All Wages Earned at Termination" in violation of California Labor Code §§ 200-203; "Failure to Provide Accurate Wage Statements" in violation of Labor Code §§ 226, 226.3; "Unfair Business Practices" in violation of California's Unfair Competition Law, Business and Professions Code § 17200; and civil penalties under California's Private Attorneys General Act ("PAGA"), Labor Code § 2698. (*Id.* ¶¶ 38–64.)

## PROCEDURAL HISTORY

Plaintiffs filed suit in California state court in June 2019. (Dkt. No. 1 at 19–31.) Shell removed pursuant to the diversity jurisdiction provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d), and purported federal question jurisdiction under 28 U.S.C. § 1331. (Dkt. No. 1 at 2.) The Court subsequently certified the class as to all claims. (Dkt. Nos. 116, 144.)

The parties participated in three settlement conferences with Chief Magistrate Judge Spero between May 2021 and June 2022. (Dkt. Nos. 98, 133, 161.) After the third settlement conference, they agreed on major terms, executed a Memorandum of Understanding, and finalized a Settlement Agreement. (Dkt. No. 171-1 at 2–3, 7–37.) Plaintiffs then filed their motion for preliminary approval and proposed class notice. (Dkt. Nos. 171, 172, 175.) At oral argument on October 20, 2022, the Court expressed some concerns with the notice. In response, the parties submitted a first amended proposed class notice. (Dkt. No. 178.) The Court identified its remaining concerns in a written order, (Dkt. No. 179), and the parties submitted a second amended proposed class notice, (Dkt. No. 180).

## SETTLEMENT TERMS

**A.  Class**

The certified class is defined as "[a]ll Operators working at the [Shell] refinery . . . in Martinez, California, who were scheduled for standby at any time from June 4, 2015, . . . up to and continuing through January 31, 2020." (Dkt. No. 144 at 8; *see* Dkt. No. 116.) There are two certified sub-classes:

<u>2016-2019 Waiting Time Penalties Sub-Class</u>

All Class Members who have been employed and separated from

> employment (either by involuntary termination or resignation) at the [Shell] refinery . . . in Martinez, California, at any time from June 4, 2016 through June 3, 2019, and who, upon separation from employment, did not timely receive all wages owed as a result of reporting obligations.
>
> 2019-2020 Waiting Time Penalties Sub-Class
>
> All Class Members who have been employed and separated from employment (either by involuntary termination or resignation) at the [Shell] refinery . . . in Martinez, California, at any time from June 4, 2019 through January 31, 2020, and who, upon separation from employment, did not timely receive all wages owed as a result of reporting obligations.

(Dkt. No. 144 at 8.)  Plaintiffs estimate there are 300 class members.  (Dkt. No. 171-1 at 4.)

**B.     Notice**

Within 10 business days of this Order granting preliminary approval, Shell will provide class members' information to the Settlement Administrator; within 15 calendar days thereafter, the Settlement Administrator will mail the approved class notice to class members.  (*Id.* at 16–18; *see* Dkt. No. 180 at 13–19 (second amended proposed class notice).)

The second amended proposed class notice will set a date certain, 45 days after the class notice is postmarked, for class members to opt out of the settlement, object to the settlement, or object to class counsel's fee request.  (Dkt. No. 180 at 14, 16–17; *see* Dkt. No. 171-1 at 17; *see also* Dkt. No. 171 at 18 (class counsel representing that they will file their fee request within 21 days of this Order so that class members may review the specifics in time to object).)

**C.     Payment Terms**

The "effective date" of the settlement means after preliminary approval is granted, the class notice is mailed, the 45-day opt out and objection period has run, the final approval hearing is held, final approval is granted, and judgment is entered.  (Dkt. No. 171-1 at 8–9.)  Within 30 calendar days of the effective date of the settlement, Shell will pay $3,200,000 into an interest-maximizing Qualified Settlement Fund created by the Settlement Administrator.  (*Id.* at 11–12.) The parties propose the following payments prior to distributing the settlement funds to class members:

(i) $7,500 service awards to each of the four Class Representatives, subject to Court approval;

3

1               (ii) $1,066,666.67 attorneys' fees award to Class Counsel (33.33 percent of the gross
2                    settlement amount), subject to Court approval;
3               (iii) Up to $45,000 in costs to Class Counsel, subject to Court approval;
4               (iv) $50,000 for the PAGA released claims, with 75 percent paid to the California Labor
5                    and Workforce Development Agency and 25 percent paid to class members, subject to
6                    Court approval; and
7               (v) Reasonable fees and expenses to the Settlement Administrator, subject to Court
8                    approval.
9    (*Id.* at 12–14.)  The remaining settlement funds will be divided proportionally among class
10   members based how many standby shifts each class member had where they were not activated for
11   work, as reflected in Shell's internal records.  (*Id.* at 14–15.)  The settlement shares will be
12   allocated as follows: 50 percent for wage claims, 25 percent for interest, and 25 percent for
13   statutory penalties.  (*Id.* at 15.)
14           Within 35 calendar days of the effective date of the settlement, the Settlement
15   Administrator will send settlement checks to class members.  (*Id.* at 14.)  The initial deadline to
16   cash the checks is 120 days after issuance.  (*Id.* at 18–19.)  The Settlement Administrator will send
17   a reminder to class members 60 days before the deadline.  (*Id.* at 19.)  Then, if uncashed checks
18   amount to more than $25,000, those funds will be redistributed among class members.  If the
19   funds amount to less than $25,000, they will be distributed *cy pres* to the East Bay Community
20   Law Center ("EBCLC").  (*Id.*)

21           **D.       Release**
22           Class members who do not timely opt out of the settlement, (*see id.* at 8, 17), release the
23   following:

> any and all claims against the Released Parties that were alleged in
> the complaint brought in this Lawsuit and all claims that could have
> been brought based on the allegations in the operative Complaint,
> related to payment of wages, penalties, interest, fees, costs, and all
> other claims and allegations made in the operative Complaint, from
> June 4, 2015 through January 31, 2020 . . . .

27   (*Id.* at 21; *see id.* at 9–10 (defining "Released Parties" as Defendant and its privies).)  The named
28   Class Representatives release a broader set of claims arising out of their employment.  (*See id.* at

4

20–21.)

## DISCUSSION

Plaintiffs seek preliminary approval to settle this case as both a Rule 23 class action and a PAGA representative action.

### I. CLASS ACTION SETTLEMENT APPROVAL

A class action settlement must be "fair, reasonable, and adequate," Fed. R. Civ. P. 23(e)(2), based on the following fairness factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (cleaned up). However, the Court cannot fully assess these until the final approval hearing. Thus, at this stage "a full fairness analysis is unnecessary," *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008) (cleaned up), and "the settlement need only be *potentially* fair," *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007). Preliminary approval is appropriate where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (cleaned up).

Whether a settlement agreement has been negotiated before a class has been certified or after, courts must also undertake an additional search for "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021) (applying *Bluetooth*'s red-flag factors to post-class certification settlement approvals). Three such red-flag factors are:

> (1) when counsel receives a disproportionate distribution of the settlement;
>
> (2) when the parties negotiate a "clear sailing arrangement," under which the defendant agrees not to challenge a request for an agreed-

        upon attorney's fee; and

        (3) when the agreement contains a "kicker" or "reverter" clause that returns unawarded fees to the defendant, rather than the class.

*Id.* (cleaned up); *see Bluetooth*, 654 F.3d at 947. Here, none of the three red-flag factors is applicable. Class counsel will seek a maximum of one-third of the settlement amount, there is no clear sailing arrangement, and unawarded funds do not revert. (*See* Dkt. No. 171-1 at 13–14, 19.)

### A. Settlement Process

The Court first considers "the means by which the parties arrived at settlement." *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011). It must be satisfied that the parties "have engaged in sufficient investigation of the facts to enable the court to intelligently make an appraisal of the settlement." *Acosta*, 243 F.R.D. at 396 (cleaned up). Courts thus have "an obligation to evaluate the scope and effectiveness of the investigation plaintiffs' counsel conducted prior to reaching an agreement." *Id.*

The process here was fair. The Settlement Agreement is the result of three separate settlement conferences with Chief Magistrate Judge Spero over the course of more than a year. *See Satchell v. Fed. Exp. Corp.*, No. C 03–2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). Plaintiffs' counsel went through extensive document production, multiple depositions, and class certification. This factor weighs in favor of granting preliminary approval.

### B. Obvious Deficiencies

The parties twice amended their proposed class notice in response to the Court's concerns. At this stage, there are no obvious deficiencies in the Settlement Agreement, and this factor weighs in favor of granting preliminary approval.

### C. Preferential Treatment

The Court next examines whether the Settlement Agreement "improperly grant[s] preferential treatment." *Tableware*, 484 F. Supp. 2d at 1079. The only preferential treatment is service awards to the four named Class Representatives, subject to Court approval. Such "[i]ncentive awards are fairly typical in class action cases . . . to compensate class representatives

6

for work done on behalf of the class [and] to make up for financial or reputational risk undertaken in bringing the action." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (cleaned up). The service awards are within the range of possible approval, and this factor weighs in favor of preliminary approval. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943, 947 (9th Cir. 2015) (approving $5,000 service awards); *Chu v. Wells Fargo Invs., LLC*, Nos. C 05-4526 MHP, C 06-7924 MHP, 2011 WL 672645, at *5 (N.D. Cal. Feb. 16, 2011) ($10,000).

### D. Range of Possible Approval

The last inquiry focuses on "substantive fairness and adequacy" and considers Plaintiffs' "expected recovery balanced against the value of the settlement offer." *Tableware*, 484 F. Supp. 2d at 1080 (cleaned up); *see Harris*, 2011 WL 1627973, at *11 (noting that courts "must estimate the maximum amount of damages recoverable in a successful litigation and compare that with the settlement amount" (cleaned up)). "[A] proposed settlement may be acceptable even though it amounts only to a fraction of the potential recovery that might be available to class members at trial." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004); *see In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("[T]he Settlement amount of almost $2 million was roughly one-sixth of the potential recovery, which, given the difficulties in proving the case, is fair and adequate.").

The Settlement Agreement is within the range of possible approval. Plaintiffs estimate Shell's total exposure is $8,550,000. (Dkt. No. 171-1 at 4.) The gross settlement fund of $3,200,000 is about 37 percent of the total exposure. (*See id.*) Continued litigation brings a risk Plaintiffs will receive nothing, especially because Plaintiffs' claims are interconnected and derivative of the same reporting time pay issue. This factor weighs in favor of preliminary approval.

\* \* \*

Each of the preliminary approval factors for Rule 23 class action settlements weighs in favor of approval. *See Tableware*, 484 F. Supp. 2d at 1079.

### II. PAGA REPRESENTATIVE ACTION SETTLEMENT APPROVAL

"A PAGA representative action is . . . a type of *qui tam* action" in which a private plaintiff

7

pursues "a dispute between an employer and the state LWDA on behalf of the state." *Iskanian v. CLS Transp. L.A., LLC*, 327 P.3d 129, 148 (Cal. 2014), *abrogated by Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906 (2022). Accordingly, there are "fundamental differences between PAGA actions and class actions." *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 435 (9th Cir. 2015) (cleaned up); *see Arias v. Superior Court*, 209 P.3d 923, 931 (Cal. 2009) (holding that class certification is not required to pursue a PAGA action).

"[B]ecause a settlement of PAGA claims compromises a claim that could otherwise be brought by the state," courts must "review and approve any settlement." *Ramirez v. Benito Valley Farms, LLC*, No. 16-cv-04708-LHK, 2017 WL 3670794, at *2 (N.D. Cal. Aug. 25, 2017) (quoting Cal. Lab. Code § 2699(l)(2)). Moreover, "[a] party seeking approval of a PAGA settlement must simultaneously submit the proposed settlement to the [LWDA] to allow the LWDA to comment on the settlement if the LWDA so desires." *Id.* at *3. But "neither the California legislature, nor the California Supreme Court, nor the California Courts of Appeal, nor the LWDA has provided any definitive answer as to what the appropriate standard is for approval of a PAGA settlement." *Jordan v. NCI Grp., Inc.*, No. EDCV 16-1701 JVS (SPx,) 2018 WL 1409590, at *2 (C.D. Cal. Jan. 5, 2018) (cleaned up). The LWDA has offered only this guidance:

> It is thus important that when a PAGA claim is settled, the relief provided for under the PAGA be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public and, in the context of a class action, the court evaluate whether the settlement meets the standards of being fundamentally fair, reasonable, and adequate with reference to the public policies underlying the PAGA.

*O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016) (cleaned up).

Several district courts have applied a Rule 23-like standard, asking whether the settlement is "fundamentally fair, adequate, and reasonable in light of PAGA's policies and purposes." *Jordan*, 2018 WL 1409590, at *2 (collecting cases). Where PAGA claims are settled together with Labor Code claims on behalf of a class, courts have also looked to the interplay of the two recoveries to determine whether PAGA's purposes have been served. The *O'Connor* court, for instance, adopted a "sliding scale," noting that "[b]y providing fair compensation to the class members as employees and substantial monetary relief, a settlement not only vindicates the rights

8

1  of the class members as employees, but may have a deterrent effect upon the defendant employer
2  and other employers, an objective of PAGA." 201 F. Supp. 3d at 1134.  In other words, where the
3  settlement of Labor Code claims under Rule 23 provides "robust" relief to the class, it supports a
4  greater reduction in PAGA penalties. *Viceral v. Mistras Grp., Inc.*, No. 15-cv-02198-EMC, 2016
5  WL 5907869, at *9 (N.D. Cal. Oct. 11, 2016).

6  Here, as discussed above, the Settlement Agreement provides robust relief for the class
7  members' Labor Code claims.  Additionally, the PAGA allocation represents about 11 percent of
8  Plaintiffs' potential PAGA recovery at trial, and about 1.6 percent of the overall settlement
9  recovery.  (Dkt. No. 171-1 at 4; *see id.* at 14.)  Those proportions are reasonable and adequate.
10 *See Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 972–74 (N.D. Cal. 2019); *e.g.*,
11 *Van Kempen v. Matheson Tri-Gas, Inc.*, No. 15-cv-00660-HSG, 2017 WL 3670787, at *10 (N.D.
12 Cal. Aug. 25, 2017) (approving PAGA allocation of 1.4 percent of overall settlement recovery);
13 *Slavkov v. Fast Water Heater Partners I, LP*, No.14-cv-04324-JST, 2017 WL 3834873, at
14 *2 (N.D. Cal. July 25, 2017) (2.2 percent).

15 Accordingly, at the preliminary approval stage, Plaintiffs' PAGA representative action
16 settlement is fair, adequate, and reasonable in light of PAGA's purposes.

### III. CLASS NOTICE PLAN

For any class certified under Rule 23(b)(3), class members must be afforded "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  Such notice must clearly state:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.*  "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (cleaned up).

1    The second amended proposed class notice includes each of the seven requirements above. (Dkt. No. 180 at 13–19.) The parties have also done their due diligence in exploring email notice, and the Court accepts their representation that email notice is not practicable under the circumstances. (Dkt. Nos. 178, 180.) Overall, the second amended class notice plan is appropriate.

**IV.   ATTORNEYS' FEES**

Rule 23(h) provides for an award of attorneys' fees and costs in a certified class action where it is "authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941.

Here, Plaintiffs plan to request $1,066,666.67 in attorneys' fees, which is 33.33 percent of the gross settlement fund. 25 percent of the common settlement fund is a "benchmark" for a reasonable fee award, unless special circumstances warrant a departure. *Id.* at 942. At this stage, the request is not so out of bounds as to warrant denying preliminary approval. Accordingly, Plaintiffs shall file a motion for attorneys' fees and costs within 21 days of this Order, (*see* Dkt. No. 171 at 18), which the Court will separately assess along with any objections. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993–94 (9th Cir. 2010) (noting that Rule 23(h) "requires that any class member be allowed an opportunity to object to the fee motion").

**V.   *CY PRES* AWARD**

"District courts may approve settlements with *cy pres* provisions that affect only a portion of the total settlement fund." *In re Google Inc. St. View Elec. Commc'ns Litig.*, 21 F.4th 1102, 1111 (9th Cir. 2021). Here, if uncashed or returned checks amount to less than $25,000, the amount will be paid to EBCLC. That amount is only a small portion of the total settlement fund and therefore the proposed *cy pres* award does not prevent preliminary approval. At the final approval stage, the Court will assess whether the selected *cy pres* beneficiary is "tethered to the nature of the lawsuit and the interests of the . . . class." *Dennis v. Kellogg Co.*, 697 F.3d 858, 867 (9th Cir. 2012) (cleaned up).

//

**CONCLUSION**

Plaintiffs' motion for preliminary approval is GRANTED. The second amended proposed class notice is approved. (Dkt. No. 180 at 13–19.) The Court orders as follows:

1. Within 10 business days of this Order granting preliminary approval, Shell will provide class members' information to the Settlement Administrator; within 15 calendar days thereafter, the Settlement Administrator will mail the approved class notice to class members. (*See* Dkt. No. 171-1 at 16–18.)

2. When the Settlement Administrator mails out the class notice, Plaintiffs shall file a copy of the final class notice with the Court.

3. Within 21 days of this Order, Plaintiffs shall file a motion for attorneys' fees and costs. (*See* Dkt. No. 171 at 18.) Shell may file an opposition within 14 days thereafter, and Plaintiffs may file a reply within 7 days thereafter.

4. Plaintiffs shall file a motion for final settlement approval on February 16, 2023.

5. The Court will hear argument on the motion for attorneys' fees and costs and the motion for final settlement approval at the Final Approval Hearing, which will take place in person on March 30, 2023 at 9:00 a.m.

6. In light of the upcoming holidays, if the parties wish to adjust any of the above dates, they shall submit a stipulation. The stipulation shall cite, with line numbers if applicable, the portions of this Order, the Settlement Agreement (Dkt. No. 171-1 at 7–29), or the approved class notice (Dkt. No. 180 at 13–19) that are affected by the stipulation. The parties shall also ensure that before the approved class notice is sent to class members, it is amended to reflect any dates that are changed by the stipulation (i.e., the date on which Plaintiffs will file their motion for attorneys' fees and costs; the date of the Final Approval Hearing).

This Order disposes of Docket No. 171.

**IT IS SO ORDERED.**

Dated: December 14, 2022

JACQUELINE SCOTT CORLEY
United States District Judge