KRISTINA L. HILLMAN, Bar No. 208599
JANNAH V. MANANSALA, Bar No. 249376
ROBERTA D. PERKINS, Bar No. 153074
CAITLIN GRAY, Bar No. 305118
ALEXANDER S. NAZAROV, Bar No. 304922
WINNIE VIEN, Bar No. 347796
WEINBERG, ROGER & ROSENFELD
1375 55th Street
Emeryville, CA  94608
Telephone: (510) 337-1001
courtnotices@unioncounsel.net
khillman@unioncounsel.net
jmanansala@unioncounsel.net
rperkins@unioncounsel.net
cgray@unioncounsel.net
anazarov@unioncounsel.net
wvien@unioncounsel.net

DAVID POGREL, Bar No. 203787
AMANDA EATON, Bar No. 341987
LEONARD CARDER, LLP
1999 Harrison Street, Suite 2700
Oakland, CA  94612
Telephone: (510) 272-0169
dpogrel@leonardcarder.com
aeaton@leonardcarder.com

Attorneys for the Class and Plaintiffs/Class Representatives

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCO DIMERCURIO, CHARLES GAETH, JOHN LANGLITZ, and MALCOLM SYNIGAL on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>EQUILON ENTERPRISES LLC dba SHELL OIL PRODUCTS US, and DOES 1 through and including 25,<br><br>Defendants. | Case No.  3:19-cv-04029-JSC<br><br>[*Assigned for all purposes to the Honorable Jacqueline Scott Corley*]<br><br>**NOTICE OF PLAINTIFFS/CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:     May 9, 2024<br>Time:    10:00 a.m.<br>Before:   Hon. Jacqueline S. Corley<br>Courtroom: 8 |

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ................................................................................................ 1
MEMORANDUM OF POINTS AND AUTHORITIES ..................................................................... 2
I.  INTRODUCTION ................................................................................................................... 2
II. CASE SUMMARY .................................................................................................................. 3
III. PROCEDURAL STATEMENT ............................................................................................. 4
    A.  Litigation Since Preliminary Approval ................................................................... 4
    B.  Settlement Administration ......................................................................................... 4
IV. SUMMARY OF SETTLEMENT TERMS ........................................................................... 6
    A.  Settlement Consideration ........................................................................................... 6
    B.  Class Definition ........................................................................................................... 6
    C.  Class Representative and Class Counsel ................................................................. 7
    D.  Notice Procedure ......................................................................................................... 7
    E.  Plan of Allocation ........................................................................................................ 7
V.  LEGAL ANALYSIS ................................................................................................................ 8
    A.  Standards for Final Approval Under Rule 23 are Met .......................................... 8
        1.  While Plaintiffs' Counsel Believe the Case is Strong, Settlement Will Avoid Considerable Risk, Expense, and Delay in Further Litigation ............ 9
        2.  The $3,600,000 Settlement Fund Provides the Class with Substantial Relief ..................................................................................................................... 10
        3.  Substantial Investigation and Discovery Supports Settlement Approval ..... 11
        4.  Class Counsel is Experienced and Endorses the Settlement ......................... 11
        5.  The Class Has Embraced the Settlement ......................................................... 12
    B.  Confirmation of the Court's Provisional Class Certification is Appropriate ........... 12
    C.  The Court-Ordered Notice Program Is Constitutionally Sound ............................... 13
    D.  *Cy Pres* Appointment ................................................................................................ 14
VI. CONCLUSION ...................................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Balderas v. Massage Envy Franchising, LLC*,
  2014 WL 3610945 (N.D. Cal., July 21, 2014) ............................................................................ 11

*Barcia v. Contain–A–Way, Inc.*,
  2009 WL 587844 (S.D. Cal. 2009) ........................................................................................... 12

*Boyd v. Bechtel Corp.*,
  485 F. Supp. 610 (N.D. Cal. 1979) ........................................................................................... 11

*Burns v. Elrod*,
  757 F.2d 151 (7th Cir. 1985) ..................................................................................................... 13

*Churchill Vill., L.L.C. v. General Electric*,
  361 F.3d 566 (9th Cir. 2004) ..................................................................................................... 13

*Class Plaintiffs v. Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ..................................................................................................... 8

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ................................................................................................................... 13

*Ellis v. Naval Air Rework Facility*,
  87 F.R.D. 15 (N.D. Cal. 1980) ................................................................................................... 11

*Fisher Bros. v. Cambridge-Lee Industries, Inc.*,
  630 F. Supp. 482 (E.D. Pa. 1985) ............................................................................................. 11

*Garner v. State Farm Mut. Auto. Ins. Co.*,
  2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ......................................................................... 8, 9

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ............................................................................................... 8, 13

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ..................................................................................................... 10

*In re Omnivision Technologies, Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) .................................................................................... 12

*Joel A. v. Giuliani*,
  218 F.3d 132 (2d Cir. 2000) ........................................................................................................ 8

*Ma v. Covidien Holding, Inc.*,
  2014 WL 360196 (C.D. Cal. Jan. 31, 2014) ............................................................................. 10

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) .............................................................................................. 12

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir.1982) .................................................................................................... 8, 9

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) .................................................................................................. 8, 9

*Tijero v. Aaron Brothers, Inc.*,
  2013 WL 6700102 (N.D. Cal. Dec. 19, 2013) .......................................................................... 10

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) ....................................................................................................... 14

**Statutes**

California Labor Code § 2699(l)(2) .................................................................................................... 8

**Rules**

Fed. R. Civ. P. 23(b)(3) ..................................................................................................................... 13
Fed. R. Civ. P. 23(c)(2)(B) ................................................................................................................ 13
Fed. R. Civ. P. 23(e) (1) .................................................................................................................... 13
Fed. R. Civ. P. 23(e) .................................................................................................................... 8, 13

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on Thursday May 9, 2024, at 10:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Hon. Jacqueline S. Corley, United States District Court for the Northern District of California, located at 450 Golden Gate Ave., San Francisco, California, in Courtroom 8, 19th Floor, Plaintiffs/Class Representatives MARCO DIMERCURIO, CHARLES GAETH, JOHN LANGLITZ, and MALCOLM SYNIGAL ("Class Representatives") will and hereby do respectfully move this Court for final approval of the proposed class action settlement and settlement of California Private Attorneys General Act ("PAGA") claims brought under the California Labor Code.

Plaintiffs/Class Representatives respectfully request that the Court (1) grant final approval of the proposed class action settlement, adjudging the terms of the settlement to be fair, reasonable, and adequate and directing that its terms and provisions be carried out; (2) certify the settlement class; (3) approve the settlement administrator's payment; and (4) appoint East Bay Community Law Center as the *cy pres* beneficiary. To be heard with this motion is Plaintiffs' separate, unopposed motion, Dkt. No. 242, requesting that the Court (1) approve the payment of a service enhancement to the named plaintiffs and (2) approve payment of class counsels' fees and litigation expenses.

Plaintiffs make this motion on the grounds that the proposed settlement is fair, reasonable, and adequate. This motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities; the Declaration of David Pogrel and exhibit thereto; the Declaration of Emilio Cofinco and exhibit thereto; the Proposed Order; the Court's record of this action; all matters of which the Court may take notice, and any other such evidence, briefing, or argument that may be presented to the Court at or before the time of hearing.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Plaintiffs seek final approval of this $3,600,000 settlement ("Settlement") with Defendant Equilon Enterprises LLC ("Defendant" or "Equilon"). The Settlement before this Court will dispose of this case, which arose out of Equilon's alleged failure to pay its Operators reporting time pay for "standby shifts," and derivative wage and hour violations that flowed from this failure.

On January 12, 2024, the Court granted preliminary approval of this settlement. Dkt. No. 241. The Order Preliminary Approving Class Action Settlement appointed CPT Group Inc. ("CPT") as the Settlement Administrator and approved the Settlement Class Notice. CPT dutifully mailed the Notice packets to all putative members of the conditionally certified class. CPT also posted a website for Class Members to read a description of the case, view the notice, download important documents including the Motion for Attorneys' Fees, see important dates, make address changes, and contact Class Counsel.

Class Members had until March 28, 2024 to object, opt-out, or challenge their award, and no Class Member has objected or opted-out of the settlement as of the preparation of this motion.[1] Declaration of Emilio Cofinco, Settlement Administrator of CPT Group, Inc. ("Cofinco Decl."), filed herewith, ¶¶ 17, 18. Class Members can expect to receive payouts (net of fees, costs, PAGA payment to the State, and class representative service awards) that average approximately $6,661.86, with the highest payout being over $19,000. Cofinco Decl., ¶ 19.[2]

The Class Members' unanimous embrace of the Settlement supports a finding that the settlement is fair, reasonable, and adequate. As discussed more fully below, the Settlement provides substantial payout and is in the best interests of the class. The Court should thus grant final approval of the Settlement, certify the class, appoint a *cy pres* beneficiary, and authorize the parties to proceed with payment to the Class Members.

//

---

[1] The opt out and objection deadline is March 28, 2024, the date on which this motion is due to be filed. Plaintiffs will file a supplemental declaration from the Settlement Administrator prior to the hearing on this motion reporting if any timely opt outs, objections or challenges were received by CPT after the filing of this motion.

[2] These numbers are based on CPT's initial calculations. Once all outstanding adjustments have been resolved, CPT will proceed with the Final Award Calculations.

## II. CASE SUMMARY

Plaintiffs filed this class action on June 4, 2019 to challenge Defendant's failure to pay its refinery Operators for assigned standby shifts. Plaintiffs brought a claim for failure to pay reporting time pay in violation of Industrial Welfare Commission ("IWC") Wage Order 1-2001 ("Wage Order"), and derivative claims for failure to pay all wages earned at termination in violation of Labor Code sections 200-203, failure to provide accurate itemized wage statements in violation of Labor Code sections 226 and 226.3, and violations of California's unfair competition law ("UCL"), Business and Professions Code sections 17200 et seq. A PAGA claim was added with the First Amended Complaint on October 25, 2019. Dkt. No. 18. The Second Amended Complaint was filed on September 13, 2021. Dkt. No. 122.

All claims stem from the central allegation that Defendant failed to pay reporting time pay when it required operators to be available for designated 12-hour standby shifts in addition to their regular 12-hour shifts. As part of being on standby, Operators had to be ready to receive calls for 1.5-hour time periods that ran from 30 minutes prior to the start of a scheduled standby shift through one hour into the standby shift. If called in, aka "activated," the Operators were required to arrive at the refinery within two hours to work the shift or remainder thereof. Operators were considered absent and subject to discipline if they could not be reached during these 1.5-hour time periods. Defendant paid no compensation for standby shifts that were not activated.

Defendant contends that the requirements for standby shifts do not constitute "reporting" to work and thus do not trigger the compensation requirements of California's reporting time pay provision. Defendant also contends that Plaintiffs would be hard pressed to prove damages on a class-wide basis.

This Court granted Plaintiffs' Motion for Class Certification with two orders, issued on August 30, 2021 and January 27, 2022. Dkt. Nos. 116 and 144. Plaintiffs believe they would overcome Defendant's arguments on the merits and damages at trial. However, Plaintiffs acknowledge that there is risk that they would not prevail on the merits or Defendant could seek to decertify the class.

//

//

### III. PROCEDURAL STATEMENT

#### A. Litigation Since Preliminary Approval

The Court's January 12, 2024 order granting Plaintiffs' Motion for Class Certification directed that by January 29, 2024: (1) counsel for the Class and Defendant were to provide Settlement Administrator CPT Group, Inc. ("CPT Group" or the "Settlement Administrator") with the class data and contact information needed for CPT Group to prepare and mail the Revised Class Settlement Notice; (2) CPT Group was to mail the Revised Class Settlement Notice; and (3) Class Counsel was to file their revised motion for attorneys' fees and litigation expenses. Declaration of David Pogrel in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Action and PAGA Settlement ("Pogrel Decl."), filed herewith, ¶ 3; Dkt. No. 241.

#### B. Settlement Administration

As part of granting preliminary approval, the Court approved CPT Group as the settlement administrator, approved notice and the notice program to the Class, and directed that notice be sent to the Class consistent with the parties' agreement. Dkt. No. 241.

On January 17, 2024, Class counsel sent to Settlement Administrator CPT Group and counsel for Defendant, the data for the class that included all Class Members' standby days during the class period that would be used to calculate individual settlement shares. Pogrel Decl., ¶ 4; Cofinco Decl., ¶ 11. Class counsel also asked counsel for Defendant to provide the class contact information ahead of the January 29, 2024 deadline to provide the Settlement Administrator with class data and contact information, so that CPT Group could mail the Revised Class Settlement Notice by the court-ordered date. Pogrel Decl., ¶ 5.

On February 1, 2024, with no response to the above communications from Defendant's counsel, CPT Group sent all counsel a final draft of the formatted Revised Class Settlement Notice and its calculation of the settlement distribution for review. Pogrel Decl., ¶ 7. Class counsel reviewed and approved both items on February 2, 2024. *Id.* Defendant's counsel responded on February 7 2024 to inform Class counsel and CPT Group of technical problems related to obtaining the class contact information that was delaying the mailing of the Revised Class Settlement Notice. *Id.*

Counsel for Defendant sent the class contact information to CPT Group on February 8, 2024.

1  Pogrel Decl., ¶ 8; Cofinco Decl., ¶ 12. On February 12, 2024, CPT Group mailed the Revised Class
2  Settlement Notice to the class, with a deadline of March 28, 2024 for class members to opt out, object,
3  or challenge the number of standby days used to calculate their pro rata shares of the net settlement
4  fund. Pogrel Decl., ¶ 9. Cofinco Decl., ¶ 14.

5        The Settlement Administrator conducted a National Change of Address (NCOA) search and
6  was able to locate new/updated addresses for 46 Class Members. Cofinco Decl., ¶ 13.   CPT did not
7  receive any notices that were returned due to a bad address. Cofinco Decl., ¶ 16.

8        CPT created and has maintained a website that provides information about the proposed
9  settlement, including a "Frequently Asked Questions" page, and provides copies of the Notice, the
10 Settlement Agreement, and the Preliminary Approval Order. Cofinco Decl., ¶ 8.

11       On January 24, 2024, Plaintiffs filed their Motion for Attorneys' Fees and Expenses and
12 Request for Class Representative Service Awards. Dkt. No. 242. The Settlement Administrator also
13 uploaded Plaintiffs' fee motion to the case-specific website for review by Class Members. Cofinco
14 Decl., ¶ 15. The Notice directed Class Members to the site in order to review the fee motion. Cofinco
15 Decl., Exh. A, p. 6. The Settlement Administrator set up a toll-free number and telephone support for
16 Class Member inquiries. Cofinco Decl., ¶ 7.

17       As of this date, no Class Member has submitted an objection and no one has opted out of the
18 settlement. Cofinco Decl., ¶¶ 17, 18.

19       The Settlement Administrator has received four (4) timely challenges. Cofinco Decl., ¶ 19. One
20 of the challenges received has been rejected, with three pending review and outstanding at the time of
21 filing. *Id.*

22       Class Members can expect to receive approximately $129.46 per standby day, net of fees,
23 litigation expenses, settlement administration costs, and class representative service awards. Cofinco
24 Decl., ¶ 22. The smallest possible award will be approximately $129.46 (for a single standby day), the
25 largest award will be approximately $19,288.95, and the average award is approximately $6,661.86.
26 Cofinco Decl., ¶ 21.
27 //
28 //

## IV. SUMMARY OF SETTLEMENT TERMS

The details of the settlement are set forth in the Settlement Agreement and Release of Claims ("Settlement"). Dkt. No. 230, Exh. A. A summary is set forth below:

### A. Settlement Consideration

In return for a release of all claims that were asserted in the action or could; have been asserted based on the facts, Defendant has created a non-reversionary $3,600,000 gross settlement fund. After certain deductions identified below, all Class Members will be paid on a pro rata basis based on the number of days they were assigned one or more standby shifts ("Standby Days") by Defendant as a Class Member in California during the settlement period.

The deductions from the gross settlement fund include attorneys' fees and litigation expenses, class representative service awards, payment to the California Labor Workforce Development Agency for settlement of the PAGA penalties claim, and settlement administration costs.

### B. Class Definition

The settlement class definition is as follows:

All Operators working at the refinery of Equilon Enterprises LLC dba Shell Oil Products US in Martinez, California, who were scheduled for standby at any time from June 4, 2015 up to and continuing through January 31, 2020.

This class was further defined to include the following subclasses:

**2016 to 2019 Waiting Time Penalties Sub-Class:** All Class Members who have been employed and separated from employment (either by involuntary termination or resignation) at the refinery of Equilon Enterprises LLC dba Shell Oil Products US in Martinez, California, at any time from June 4, 2016 through June 3, 2019, and who, upon separation from employment, did not timely receive all wages owed as a result of reporting obligations.

**2019 to 2020 Waiting Time Penalties Sub-Class:** All Class Members who have been employed and separated from employment (either by involuntary termination or resignation) at the refinery of Equilon Enterprises LLC dba Shell Oil Products US in Martinez, California, at any time from June 4, 2019 through January 31, 2020, and who, upon separation from employment, did not timely receive all wages owed as a result of reporting obligations.

### C. Class Representative and Class Counsel

In certifying the class, the Court appointed Plaintiffs Marco Dimercurio, Charles Gaeth, John Langlitz, and Malcolm Synigal as the class representatives and their counsel, Weinberg, Roger & Rosenfeld and Leonard Carder, LLP, as Class Counsel. Dkt. Nos. 116 and 144.

### D. Notice Procedure

The Court approved CPT Group as the Settlement Administrator. The Settlement Administrator mailed the Notice packet to each Class Member, with instructions on how to opt-out, object, or challenge their settlement allocation. The notice also informed Class Members about the established website and a toll-free telephone number established for Class Member inquiries. Because this is not a claims-made settlement, Class Members are not required to make a submission to participate in the settlement.

### E. Plan of Allocation

**1. Net Settlement Amount:** The Net Settlement Amount is approximately $2,271,694.52, assuming the Court grants Class Counsel's request for fees and costs. Cofinco Decl., ¶ 20. Payments to individual Class Members shall be calculated and apportioned from the Net Settlement Amount based on the number of unactivated standby days during the settlement class period. There are an estimated 17,548 standby days covered by the Settlement. Cofinco Decl., ¶ 22. Class Members can expect to receive at least approximately $129.46 per standby day. The smallest award will be approximately $129.46; the largest award will be approximately $19,288.95; the average award will be approximately $6,661.86; and 75 Class Members will receive in excess of $10,000; Cofinco Decl., ¶¶ 21, 22

**2. Attorneys' Fees, Costs and Enhancements:** Class Counsel has asked the Court to award one-third (33.33%) of the settlement fund, or $1,200,000, for attorneys' fees, and litigation expenses of $44,617.98. In addition, Plaintiffs Marco Dimercurio, Charles Gaeth, John Langlitz, and Malcolm Synigal are asking for $7,500 each for class representative service awards. Dkt. No. 242.

**3. LWDA payment:** The parties have agreed to pay the LWDA $42,187.50 (75 percent of a $56,250 PAGA penalty allocation) under Labor Code § 2699 (i) to settle this claim and the parties have submitted this settlement to the California Labor and Workforce Development Agency ("LWDA") under California Labor Code § 2699(l)(2).

**4.      Claims Administrator Fees:** CPT Group's fee to administer this settlement is $11,500, which includes payment for an initial notice that needed to be revised when the parties renegotiated the settlement following preliminary approval of a smaller settlement amount. Cofinco Decl., ¶ 23.

## V.      LEGAL ANALYSIS

### A.      Standards for Final Approval Under Rule 23 are Met

Federal Rule of Civil Procedure 23(e) provides that any compromise of a class action must receive court approval. The Court has broad discretion to grant such approval and should do so where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998); *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000). In determining whether a proposed settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *Class Plaintiffs v. Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992). Courts generally will not intrude into the private consensual agreement negotiated between the parties except to ensure that the settlement "is not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365, 2010 WL 1687832, at *8 (N.D. Cal. Apr. 22, 2010) (Wilken, J.) (citing *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 625 (9th Cir.1982)).

In deciding whether a class action settlement is fair, adequate, and reasonable, courts in the Ninth Circuit consider the following factors: (1) the strength of the Plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 963 (9th Cir. 2009) (overruled on other grounds). In this case, these factors weigh heavily in favor of final approval because the benefit of a considerable non-reversionary financial recovery of $3,600,000 outweighs the risks, costs, and delays inherent in further class litigation.

//

### 1. While Plaintiffs' Counsel Believe the Case is Strong, Settlement Will Avoid Considerable Risk, Expense, and Delay in Further Litigation

Factors one through three identified above weigh strongly in favor of settlement approval because, while plaintiffs' case is strong, there are considerable risks at class certification and on the merits, and litigating those issues further would take considerable time and resources.

Courts assess the likelihood of success not by a particular formula, but instead by "delicate balancing, gross approximations and rough justice." *Officers for Justice*, 688 F.2d at 625. Rather than reaching any conclusions on the contested legal and factual issues, a court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner,* 2010 WL 1687832, at *9 (citing *Rodriguez*, 563 F.3d at 965).

The risks, complexity, and expenses of this action and the expected duration of this litigation all weigh in favor of final approval. Defendant has at all times maintained that its standby system for Operators was lawful and thus has not violated the various Labor Code and wage order provisions underlying the claims asserted in this case. In addition, Defendant maintains that Plaintiffs' claims are not amenable to class treatment, and it would have filed a motion for decertification had this litigation continued. While Plaintiffs believe they could defeat these defenses, there remains a risk that the Court would decertify the class action and that the Court could agree with Defendant on standby shifts, reporting time pay, and the particulars of the wage and hour violations.

In addition, Defendant's position is that proving damages would be challenging, as Defendant did not have an official mechanism to track which standby shifts were traded, activated, or otherwise not compensable under Plaintiffs' theory of liability. Further, most of the Operators are unlikely to have detailed documentation of their standby shifts.

Furthermore, the costs of litigating an action on behalf of 341 Class Members could have been potentially massive, and Class Counsel would incur these costs at the potential risk of recovering nothing for any of them. The costs expended in litigating this case already exceed $44,000. Dkt. No. 242. Significant additional costs would have been incurred throughout the process of preparing for trial and the appellate process.

1    Finally, litigating a decertification motion and summary judgment, trying the liability issues
2    and damages, not to mention the possibilities of appeal, would delay resolution of this case by years.
3    Settlement ensures prompt payment to the class.

4    **2.    The $3,600,000 Settlement Fund Provides the Class with Substantial Relief**

5    The monetary recovery provided by the Settlement well supports approval. The gross settlement
6    amount is $3,600,000, which represents approximately 37 percent of the maximum verdict in this case.
7    Dkt. No. 171. Of course, Defendant argues that the recovery would be significantly less, if there is any
8    recovery at all. The Net Settlement Amount is approximately $2,271,694.52. According to the
9    Settlement Administrator, Class Members can expect to receive on average approximately $6,661.86,
10   with awards ranging between approximately $129.46 and $19,288.95; 75 people will receive at least
11   $10,000. Cofinco Decl., ¶¶ 21, 22. Standing alone, the cash amount of the settlement is fair, adequate,
12   and reasonable given the risks of continued litigation. *Cf. In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d
13   454, 459 (9th Cir. 2000) (finding a recovery of one-sixth of the potential recovery to be fair under the
14   circumstances); *Mojica v. Compass Group*, 13-cv-1754 (ECF No. 38) (C.D. Cal. March 14, 2014)
15   (preliminary approval of a $5 million settlement for 22,000 Compass Group food service employees,
16   with a net settlement fund of $3,175,834, and with only a 25% guaranteed pay-out to claimants
17   ($793,958.50) for 1.6 million workweeks)); *Scott v. Bimbo Bakeries USA*, No. 2:10 cv 03154 (ECF No.
18   174) (E.D. Pa. March 5, 2014) (approving settlement of wage and hour claims alleging independent
19   contractor misclassification for payments of $900 to each current driver and $450 to each former
20   driver); *O'Sullivan v. AMN Services, Inc.*, 12-cv-2125 (ECF No. 92) (N.D. Cal. Feb. 7, 2014) (Spero,
21   M.J.) ($3 million for a class of 11,685 people – total exposure estimated for the case was $108 million,
22   before penalties and interest); *Ma v. Covidien Holding, Inc.*, No. SACV 12–02161–DOC (RNBx), 2014
23   WL 360196, at *2, 5 (C.D. Cal. Jan. 31, 2014) (finding that settlement providing "9.1% of the total
24   value of the action [was] 'within the range of reasonableness'"); *Tijero v. Aaron Brothers, Inc.*, No. C
25   10-01089-SBA, 2013 WL 6700102 at *3 (N.D. Cal. Dec. 19, 2013) (granting preliminary approval of
26   settlement of wage and hour claims where the average recovery would be between approximately $28
27   and $45); *Bautista v. Harvest Management Sub*, No. 2:12-cv-10004 (ECF No. 60) (C.D. Cal. Oct. 16,
28   2013) (preliminarily approving a $2.2 million settlement of wage-and-hour violation claims of 14,000-

member class); *Balderas v. Massage Envy Franchising, LLC,* Case No. 12–cv–06327 NC, 2014 WL 3610945, *5 (N.D.Cal., July 21, 2014) (approving settlement where gross settlement amount "represents roughly eight percent of the maximum recovery").

Finally, the plan of allocation is also fair and reasonable. The Settlement provides that the settlement funds shall be allocated based on the best available records from which to estimate the number of days the Class Members were assigned to standby shifts that were not activated, which is the most precise allocation methodology possible given the available records, including input and adjustments from Class Members themselves. Class Members have been provided with the opportunity to dispute the information contained in Defendant's records.

### 3. Substantial Investigation and Discovery Supports Settlement Approval

The stage of the proceedings and the amount of investigation completed is an important factor that the courts consider in determining the fairness, reasonableness, and adequacy of a settlement. *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) *aff'd.*, 661 F. 2d 939 (9th Cir. 1981); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 616-17 (N.D. Cal. 1979). Here, the parties engaged in extensive discovery, including voluminous production of documents and data, and at least nine (9) witness depositions; Class Counsel interviewed dozens of Class Members and other witnesses, gathered declarations from 20 putative Class Members to support their motion for class certification.  Further, Class Counsel analyzed many of the issues concerning merits of the claims as they prepared the record and briefing for class certification, four settlement conferences with Chief Magistrate Judge Spero, and extensive exchanges with Defendant's counsel in between those sessions to reach this resolution.

### 4. Class Counsel is Experienced and Endorses the Settlement

As detailed in the Motion for Preliminary Approval, experienced counsel operating at arm's-length has weighed all of the risk factors and endorses the proposed settlement. The view of the attorneys actively conducting the litigation is "entitled to significant weight." *Fisher Bros. v. Cambridge-Lee Industries, Inc.*, 630 F. Supp. 482, 488 (E.D. Pa. 1985); *see also*, *Ellis*, 87 F.R.D. at 18; *Boyd,* 485 F. Supp. at 616-17.

Class Counsel has extensive wage and hour class action experience. *See* Dkt. Nos. 242-5, 242-6. Class Counsel is confident that the class recovery here is fair and reasonable to the class as a whole

and to its individual members, taking into consideration the potential recovery as compared to the actual recovery, the stage of the litigation when the settlement was reached, the risks inherent in any litigation and the specific risks in this case, and the reasonable tailoring of each class member's claim to the amounts received. Under these circumstances, Class Counsel's assessment that the Settlement is fair, adequate, and reasonable is worthy of deference. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.").

### 5. The Class Has Embraced the Settlement

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the Class Members." *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (citing *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528–29). As described above, pursuant to the Court's preliminary approval order, the Settlement Administrator mailed the Notice packets to all Class Members identified in the class data. The deadline to object to the Settlement is March 28, 2024. Cofinco Decl., ¶ 14. To date, no Class Member has objected to the Settlement, and no one has submitted a request to be excluded from the Settlement. Cofinco Decl., ¶¶ 17, 18. This lack of opposition and opt-outs confirms the correctness of this Court's preliminary determination that the Settlement is fair, reasonable, and adequate and should be finally approved by the Court. *See Barcia v. Contain–A–Way, Inc.*, No. 07cv938, 2009 WL 587844, *4 (S.D. Cal. 2009) (absence of objectors "strongly supports the fairness, reasonableness, and adequacy of the settlement").

### B. Confirmation of the Court's Provisional Class Certification is Appropriate

Plaintiffs also request that the Court confirm its provisional certification order and find that the proposed settlement class meets all the requirements under Rule 23. Specifically, plaintiffs ask the Court to finally certify the class as previously defined for settlement purposes. *See* Dkt. Nos. 116 and 144.

The provisionally certified settlement class satisfies each of the certification requirements: (1) the individuals in the settlement class are so numerous that joinder would be impracticable; (2) there are numerous questions of law and fact common to the class; (3) the named plaintiffs' claims are typical

of the claims of the absent settlement class members; and (4) plaintiffs and their counsel will adequately and fairly represent the interests of the absent settlement class members. *See Hanlon*, 150 F.3d at 1019; Dkt. Nos. 116 and 144. In addition, plaintiffs have established that the Class is maintainable under Fed. R. Civ. P. 23(b)(3) because common questions "predominate over any questions affecting only individual members," and class resolution "is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3); Dkt. Nos. 116 and 144. Accordingly, Plaintiffs request that the Court affirm the certification of the class for settlement purposes under Fed. R. Civ. P. 23(b)(3).

### C. The Court-Ordered Notice Program Is Constitutionally Sound

Under Rule 23(e), the Court "must direct notice in a reasonable manner to all Class Members who would be bound by a propos[ed settlement]." Fed. R. Civ. P. 23(e) (1). Class Members are entitled to receive "the best notice practicable" under the circumstances. *Burns v. Elrod*, 757 F.2d 151, 154 (7th Cir. 1985). Notice is satisfactory "if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004) (internal citations omitted). Moreover, notice that is mailed to each member of a class "who can be identified with reasonable effort" constitutes reasonable notice. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974). For any certified Rule 23(b)(3) class, the notice must inform class members "that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded." Fed. R. Civ. P. 23(c)(2)(B).

The Notice plan provided for in the Settlement and approved by the Court in its January 12, 2024 Order satisfies the standard for all persons who were mailed notice. The Notice Packet uses language that is concise and easy to understand, and otherwise complies with Rule 23(c)(2). It encouraged Class Members to contact the Settlement Administrator or Class Counsel with any questions and provided their telephone numbers, mailing addresses, emails, and web contact information. Cofinco Decl., Exh. A, §§ 11-12. The Notice Packet also provided each Class Member with an individualized estimate of their settlement share, the basis for calculating that share, and how to contest the underlying assumptions for that calculation. *Id.,* § 5. The Settlement provided Class

1  Members with 45 days after the Class Notice of Settlement was mailed to object to or opt out of the
2  Settlement.
3        The parties have now implemented the notice plan. The court-appointed Settlement
4  Administrator, CPT Group, received the list of class member names and addresses compiled by
5  Defendant, mailed the Notice Packets by first class mail to all Class Members, and conducted a locator
6  trace for each individual. Accordingly, with respect to all Class Members, the Notice Packet and Notice
7  plan fulfilled all requirements of adequate notice and should be duly approved. *See Torrisi v. Tucson*
8  *Elec. Power Co*., 8 F.3d 1370, 1374-75 (9th Cir. 1993); Fed. R. Civ. P. 23(C)(2); Manual for Complex
9  Litig. (4th), § 21.312. As of March 28, 2024, *no* settlement Class Members have requested exclusion
10 or have submitted any objection to the Settlement. Cofinco Decl., ¶¶ 17, 18.

    **D.**    *Cy Pres* **Appointment**

The Settlement contemplates a second distribution to the Class for any amounts from uncashed checks, if those amounts total over $25,000. Dkt. No. 236, Exh. A, § III(E)(5). After that second distribution, or if the uncashed checks total less than $25,000, any residual amount from uncashed checks or other remaining funds will be paid to the East Bay Community Law Center ("EBCLC") as the *cy pres* beneficiary, under the terms of the Settlement. *Id.*; Pogrel Decl. ¶ 12. EBCLC's non-profit work on-behalf of low-wage clients, including legal advice and counsel, effective referrals, and legal representation, qualifies the organization for *cy pres* designation. Pogrel Decl. ¶ 12, Exh. 1. Plaintiffs respectfully request confirmation of this *cy pres* appointment.

### VI.    CONCLUSION

In light of the foregoing, Plaintiffs respectfully requests that the Court grant the motion for final approval of the class action and PAGA settlement, certify the class, appoint EBCLC as the *cy pres* beneficiary, and authorize payment to the class.

|  |  |
|---|---|
| DATED: March 28, 2024 | Respectfully submitted,<br>LEONARD CARDER, LLP<br>WEINBERG, ROGER & ROSENFELD<br><br>By:   */s/ David Pogrel*<br>        DAVID POGREL<br><br>*Attorneys for Class Representatives and the Class* |